**E.I. DuPONT DE NEMOURS AND COMPANY, Defendant Below, Appellant,**

v.

**FLORIDA EVERGREEN FOLIAGE and Louis Chang, Plaintiffs Below, Appellees.**

No. 205, 1999.

Supreme Court of Delaware.

Submitted: Sept. 21, 1999.
Decided: Dec. 6, 1999.
Rehearing Denied Jan. 26, 2000.

for rescission or a separate suit for fraud with damages calculated on the difference between that received under the release and the value of the settlement or recovery achieved had there been no fraud by the released party.

Richard L. Horwitz, and Kevin R. Shannon, Potter Anderson & Corroon LLP, Wilmington, Delaware and A. Stephens Clay (argued), Kilpatrick Stockton LLP, Atlanta, Georgia, for Appellant.

Peter E. Hess, the Law Office of Peter E. Hess, Wilmington, Delaware, Stephen T. Cox (argued) and David W. Moyer, Cox & Moyer, San Francisco, California, and A. Camden Lewis, and Thomas A. Pendarvis, Lewis, Babcock & Hawkins, Columbia, South Carolina, for Appellees.

Thomas P. Preston, Duane, Morris & Heckscher LLP, Wilmington, Delaware, Amicus Curiae Delaware State Chamber of Commerce.

Ben T. Castle, and Matthew P. Denn, Delaware Trial Lawyers Association, Wilmington, Delaware, Amicus Curiae Delaware Trial Lawyers Association.

Phebe S. Young, the Bayard Firm, Wilmington, Delaware and Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, Virginia, Amicus Curiae Product Liability Advisory Council, Inc.

Before WALSH, HOLLAND, and BERGER, Justices.

WALSH, Justice:

This Court has accepted a certified question of law from the United States District Court for the Southern District of Florida pursuant to Supreme Court Rule 41(a). The question of law concerns the ability of a litigant who signed a settlement and release of a tort claim to bring suit against the released party for fraudulent inducement. We conclude, in answer to the certified question, that, under Delaware law, a tort claimant fraudulently induced to execute a release may opt either

## I.

The factual basis for certification is taken from the District Court for the Southern District of Florida's Order and Certificate of Question of Law to the Supreme Court of the State of Delaware, dated May 5, 1999. Our certification acceptance is limited to these facts. *Kerns v. Dukes*, Del.Supr., 707 A.2d 363, 367 (1998).

In October, 1992, Louis Chang and his nursery business, Florida Evergreen Foliage, (collectively "Plaintiffs") brought a products liability action (the "First Suit") against E.I. duPont de Nemours and Company ("DuPont") alleging that a DuPont fungicide, Benlate, was defective and that it caused damage to their plants and nursery. In May 1994, Plaintiffs entered into a settlement agreement with DuPont that resulted in DuPont's payment of $2.3 million in exchange for Plaintiffs executing a release. The preamble of the settlement agreement states:

WHEREAS, Plaintiff has filed suit against Defendant in the civil action identified on Exhibit 1 attached hereto ("the Action") in which Plaintiff has alleged against Defendant various claims related to Plaintiff's purchase and/or use of Benlate fungicide;

WHEREAS, Defendant has denied the aforementioned allegations;

WHEREAS, Plaintiff desires to terminate said litigation, to release and dispose of all claims against Defendant and all claims incident thereto against Defendant, thereby finally disposing of the same, and to give assurance that Plaintiff will not hereafter prosecute such claims or cause them to be prosecuted.

The settlement agreement also includes the following release language in Paragraph 1:

> In consideration of Defendant's payment of the amount set forth in the authorization previously signed by Plaintiff, Plaintiff hereby releases Defendant from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff ever had, now has, or may hereafter have against Defendant, by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in this action).

Further, the settlement agreement, in Paragraph 15, provides:

> This release shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the choice of laws provisions thereof.

On September 23, 1998, Plaintiffs filed the present action ("Present Action") for fraudulent inducement in the United States District Court for the Southern District of Florida. In their Amended Complaint, Plaintiffs allege that during the course of the litigation of the First Suit, DuPont wrongfully, illegally, and fraudulently withheld from discovery vital scientific data and information that DuPont was under an obligation to produce in the First Suit and in other Benlate litigation being conducted while the First Suit was pending. Plaintiffs also allege that DuPont gave false testimony in other Benlate cases about the product's alleged defects and about scientific tests of Benlate relating to such issues. Plaintiffs further allege that the data was material to establishing the allegedly defective and contaminated nature of Benlate. They claim that DuPont withheld this data and information and made false statements in implementation of a scheme to defraud Plaintiffs and others who had used Benlate and suffered resulting damage. Plaintiffs assert that DuPont's fraudulent conduct began before September 1991 and was continuing as of the filing of the Present Action.

The alleged effect of this scheme and fraud was to induce Plaintiffs to enter into the May 1994 settlement agreement with DuPont for less than they would have otherwise have insisted upon. Plaintiffs allege that, had they known of the concealed data and information, they would have been in a more advantageous position in the First Suit and would have been able to achieve either a judgment in their favor or a more favorable settlement.[1] Plaintiffs have not tendered or paid to DuPont the $2.3 million received as consideration for the release. Plaintiffs allege that before they discovered the fraud, they used the settlement proceeds to pay attorneys' fees, taxes, Benlate remediation costs, and bank loans, and, as a result, are unable to make an adequate restoration.

The Florida District Court Order of Certification posed the following question: "Under Delaware law, does the release in these settlement agreements bar Plaintiffs' fraudulent inducement claims?" By order dated May 21, 1999, this Court accepted the certified question.

## II.

DuPont contends that the express provisions of the release bar Plaintiffs' fraudulent inducement claims. Specifically, DuPont argues that Delaware law does not, and should not, recognize settlement fraud based on prior litigation misconduct as an independent cause of action where the parties have agreed to and affirmed a release that includes such claims. DuPont contends that, under Delaware law, the only

---

1. Plaintiffs assert as damages in the Present Action "financial losses, including but not limited to settling their cases for substantially less than their true value, extreme emotional distress, lost business opportunities, loss of use of money they should have had, and other damages to be proven at trial." (Complaint at 55, ¶ 247).

remedy for a fraudulently induced release is rescission with restoration of the proceeds of the settlement. Because Plaintiffs failed to promptly and unequivocally elect to rescind the contract and make a timely tender of the settlement proceeds upon learning of the facts giving rise to the alleged fraud, DuPont asserts that Plaintiffs are foreclosed from pursuing such remedy.

Plaintiffs contend that the release does not cover the conduct alleged in the Present Action. They argue that the language of the release makes it clear that the parties were settling a products liability claim based on damage to Plaintiffs' plants and business arising from the use of a defective product and *not* damages attributable to DuPont's fraudulent conduct which, Plaintiffs claim, was unknown at the time and completely unrelated. Moreover, Plaintiffs argue that any clause in the release interpreted to bar Plaintiffs' fraud action would be unconscionable, against public policy, and unenforceable.

Plaintiffs contend that under the election of remedies doctrine they need not rescind the settlement agreement to bring the Present Action for Fraud against DuPont. However, as an alternative remedy, Plaintiffs have asked that the release be rescinded, despite the concession that they have yet to make a timely tender of the settlement consideration. In effect, they seek an equitable exception to the requirement of restoration of benefits incident to rescission.

### III.

■ The certifying court has indicated that it has phrased the certified question "in its broadest terms" to permit this Court to determine "what facts in the record and the pleadings are relevant to the resolution of the issues encompassed by the question certified." While we appreciate this invitation to flexibility in framing the facts, we view the procedural context in which this question arose in the certifying court to be much more restrictive.

The certified question was prompted by DuPont's motion to dismiss under Federal Rules of Procedure 12(b)(6) for failure to state a claim for which relief can be granted. The certifying court has noted that for "consideration of DuPont's Motion to Dismiss, the allegations of the Amended Complaint will be presumed true." Thus, consistent with the requirements for consideration of a motion to dismiss under F.R.C.P. 12(b)(6), we view the facts from a perspective which favors Plaintiffs. *Stone v. Wall*, 11th Cir., 135 F.3d 1438, 1442 (1998).

■ To the extent we are required to credit the allegations of the complaint, we must assume that Plaintiffs can prove that they were fraudulently induced to execute the settlement agreement. This assumption, to a large extent, renders immaterial certain of the parties' contentions over the language of the release, and whether exculpatory language should be specific or general. Nonetheless, in view of the preamble language referring to claims related to the use of Benlate, the releasing language is arguably ambiguous. Moreover, the release does not purport to release the specific fraud claims alleged in the Present Action; Delaware law is clear that words of general application used in a release "which generally follow a specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matter referred to in the recital." *Adams v. Jankowskus*, Del.Supr., 452 A.2d 148, 156 (1982).

DuPont argues that Plaintiffs, in executing a release with the advice of counsel for claims "whether known or unknown," manifested an intention to give an "expansive release completely serving their relationship and leaving no ground for further dispute ." There is some merit to the contention that parties entering into a general release are chargeable with notice that any uncertainty with respect to the contours of the dispute which led to the litigation,

including that which is provable and that which is not, is resolved through the release. *See Hob Tea Room v. Miller,* Del. Supr., 89 A.2d 851, 856 (1952) (construing the effect of a general release that the Court characterized as "unmistakably lucid"). It is quite another thing, however, to conclude that a person is deemed to have released a claim of which he has no knowledge, when the ignorance of such a claim is attributable to fraudulent conduct by the released party. 66 Am.Jur.2d *Release* § 30 (1973). At a minimum, if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud.

■ Although this Court has not specifically addressed the question of whether fraud arising from the execution of a release is actionable, we believe that the party seeking enforcement of the release bears the burden of proving that the released fraud claim was within the contemplation of the releasing party. As the New Jersey Supreme Court noted in a case where the fraud claim was not "expressly embraced in [the] instrument,"

> it [cannot] be said on the present record that [the fraud] was within the fair import of the general terms employed. Such a contention cannot be sustained by anything short of proof that the matter of possible fraud in the stock sale was specifically considered at the time the transaction was consummated and the release delivered. That heavy burden rests squarely upon the defendant.

*Bilotti v. Accurate Forming Co.,* 39 N.J. 184, 188 A.2d 24, 36 (1963). This heavy burden of proving inclusion undoubtedly reflects a recognition that one party to the transaction was charged with deceitful conduct.

The parties, supported by the respective *amici,* advance competing public policy arguments concerning construction of the release. Plaintiffs argue strenuously that the fraud alleged in this case goes to the very integrity of the judicial process. Recognizing the release as a bar of all claims, Plaintiffs contend, will reward the party whose malfeasance and violation of court rules vitiates an amicable resolution of the dispute. DuPont and *amici* Delaware State Chamber of Commerce contend that permitting a fraud exception for general releases will undercut the certainty and predictability of settlements and encourage a new class of settlement fraud litigation with accompanying practitioners.

■ Candor and fair-dealing are, or should be, the hallmark of litigation and required attributes of those who resort to the judicial process. The rules of discovery demand no less. *Allstate Ins. Co., Inc. v. Walker,* Fla.Dist.Ct.App., 583 So.2d 356, 358 (1991) ("Candor towards the tribunal is essential to preserve the proper administration of justice"). The fraud alleged here, including the concealment of evidence during discovery, represents a wrong not only as to the releasing party but to the court as well. Additionally, if a party cannot release in good faith, the policy of encouraging the settlement of cases is in jeopardy. As to the argument that recognizing a fraud exception for general releases will encourage collateral litigation, we view the incidents of such claims to be rare and exceptional. Indeed, the rarity of such claims is what makes the certified question, at least in this jurisdiction, one of first impression

■ If, as Plaintiffs allege, they were fraudulently induced to execute the release of their Benlate claims, Plaintiffs are assumed to be able to present evidence to satisfy the elements of common law fraud. In *Stephenson v. Capano Dev., Inc.,* Del. Supr., 462 A.2d 1069, 1074 (1983), this Court defined fraud as consisting of:

> (1) a false representation, usually one of fact, made by the defendant;

> (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

(3) an intent to induce the plaintiff to act or to refrain from acting;

(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

(5) damage to the plaintiff as a result of such reliance.

Further, under common law fraud, the representation must not only be material, but must concern "an essential part of the transaction." *Nye Odorless Incinerator Corp. v. Felton,* Del.Super., 162 A. 504, 512 (1931).

As applied to the execution of the release in dispute here, the pertinent elements are the defendant's knowledge of falsity or reckless indifference to the truth and an intent to induce action. Such conduct, allegedly, subsists separate from, and necessarily occurred after, any conduct DuPont may have engaged in with respect to its manufacture or distribution of Benlate. Thus, the very essence of the fraud alleged here is the separate conduct of DuPont in creating a false representation and inducing reliance thereon after the litigation commenced. Accordingly, the torts are different sequentially and conceptually.

■ We conclude that the absence of a specific reference to the actionable fraud limits the scope of the general release in this case. To accord a different construction to the general release under the circumstances alleged would countenance an unconscionable contract clause advanced by a party who, for present purposes, concedes fraud. Such an approach would seriously undermine the requirement of *bona fide* in the execution of contracts and undermine confidence in the dispute resolution goal of promoting settlement of litigation.

### IV.

Having determined that Plaintiffs' allegation of fraud in the inducement of the release entitles them to relief under Delaware law, we next address the remedy available to them. As previously noted, Plaintiffs argue that their fraudulent inducement claim gives rise to a choice of remedies: rescission of the release or affirmance of the compensatory aspects of the release with the right to pursue a separate tort claim for fraud. Plaintiffs assert in their complaint that since they have disbursed the $2.3 million proceeds of the settlement, they are not in a position to place the opposing party in the *status quo ante,* a necessary condition to pursuit of rescission. Their complaint alleges, alternatively, a request for rescission without return of the settlement consideration because of "DuPont's conduct in delaying discovery of the fraudulent concealment." (Complaint at 59, ¶ 272).

DuPont argues that Delaware law permits Plaintiffs only one option—an equitable action for rescission with restoration of the settlement proceeds. DuPont contends that rescission is "an effective, adequate and balanced remedy for a plaintiff who contends that a settlement was fraudulently induced." To permit a separate tort action, DuPont argues, is inconsistent with prior Delaware decisional law. Moreover, DuPont claims that the tort option spawns collateral litigation and imposes the speculative task of determining the value of the bargain lost, in short, requiring the second guessing of compromised positions assumed by the parties in the prior litigation.

■ A release is a form of contract with the consideration typically being the surrender of a claim or cause of action in exchange for the payment of funds or surrender or an offsetting claim. The remedy afforded a party who claims to have been fraudulently induced to execute a release, thus, parallels that available to any party defrauded under a contract. Two cases from the Court of Chancery have considered the remedy options available to the defrauded party and lend some guidance to an analysis of the certified question.

The earlier case, *Hegarty v. American Commonwealths Power Corp.*, Del.Ch., 163 A. 616 (1932), involved an allegedly fraudulent acquisition of stock. The plaintiff sought to pursue an equitable right, of rescission although he did not restore, nor offer to restore, anything obtained under the contract claiming an inability to do so. Although the court ultimately determined that the terms of the rescission sought by the plaintiff were inequitable, the court examined the options available to the plaintiff. It noted that where a party is induced to enter an agreement by fraudulent misrepresentation, that party can either: (i) "let the contract stand, retaining all that he obtained thereunder, and maintain an action at law to recover damages for fraud" or (ii) "choose to regard the contract as never having been entered into and seek relief based on rescission." *Id.* at 619.

A later case from the Court of Chancery, *Eastern States Petroleum Co. v. Universal Oil Prod. Co.*, Del.Ch., 49 A.2d 612 (1946), is somewhat closer to the mark since it involved a release. In *Eastern States*, the parties had entered into a compromise agreement during the course of a patent infringement litigation. The consideration included the release of the complainant's rights in an antitrust case against a third party to whom the released party was liable. The court viewed this release as part of the consideration for certain licenses and rights received by the complainant in the agreement of settlement and held that the complainant must make an election of remedies because of the fraud alleged by the complainant in the making of the settlement.

Both *Hegarty* and *Eastern States* are of limited assistance in fixing the contours of the rescission/fraud remedy under Delaware law. Although rescission was sought in both cases, the court's discussion of the damages option was not directed to the efforts of a plaintiff seeking that remedy because jurisdictional limits of an equitable action under Delaware law preclude a plaintiff from seeking only damages for fraud.[2] Even if damages are sought alternatively in equity, they may be awarded only if ancillary to equitable relief. *See Roland Int'l Corp. v. Najjar*, Del.Supr., 407 A.2d 1032 (1979) (sustaining a complaint brought in equity by minority shareholders attacking the merger even though the complaint sought only money damages).

An earlier decision of this Court also offers inferential support for the maintenance of a tort action arising from contract fraud. In *Phoenix Oil Co. v. Mackenzie Oil Co.*, Del.Supr., 154 A. 894, 898 (1930), this Court considered the options available to a defrauded buyer as involving three choices: (i) rescission; (ii) affirmance of the contract with retention of the consideration with the right to recover damages for false representation and (iii) affirmance of the contract and use of fraud as a defense if the seller seeks to recover any unsatisfied consideration. Although this Court appeared to apply Texas law in upholding the right of a defrauded vendor to recover damages by way of a counterclaim, the affirmed Superior Court decision contains a more expansive statement of the law. In *Mackenzie Oil Co. v. Omar Oil & Gas Co.*, Del.Super., 154 A. 883, 891 (1929), the Superior Court relied upon general authority in characterizing the damages option in a tort action for deceit:

> Where the defrauded vendee elects to recover the damages suffered by him in a suit against the vendor, whether the contract of sale be executed or executo-

**2.** Since Delaware continues to maintain a separate court of equity, if the Court of Chancery determines that the plaintiff has failed to demonstrate an equitable basis for its jurisdiction, the Court may dismiss the complaint on the ground of an adequate legal remedy or permit transfer to the Superior Court. 10 *Del.C.* § 1902. The presence of a separate court of equity may explain, in part, the absence under Delaware decisional law of efforts to pursue in a single suit, alternative remedies of rescission and damages. It may also explain the dearth of precedent in the Delaware state courts.

ry on his part, his action is not on the contract but is in tort for deceit and such contract is merely the inducement to the action and collateral thereto.

There are many cases of the violation of legal rights constituting torts where contracts are involved; but this case does not require an extended discussion of the principles involved or the extent of that rule as it clearly applies where a contract is induced by false representations.

(Citations omitted).

A more recent decision of the United States District Court for Delaware offers prediction of Delaware law on the question of a tort remedy for fraud in the execution of a release. Both procedurally and factually, the decision in *DiSabatino v. U.S. Fidelity & Guar. Co.*, D.Del., 635 F.Supp. 350 (1986) is similar to the circumstances which prompt the present certified question. In *DiSabatino*, the plaintiffs who had settled a tort claim through execution of a general release in exchange for the payment of policy limits, subsequently learned that the insurance agent acting on behalf of the defendant had misrepresented the limits of liability coverage. The plaintiff commenced an action for fraud, without returning the settlement proceeds, and sought damages for compensatory and punitive damages representing "a substantially greater recovery." The defendant moved to dismiss contending that plaintiffs only remedy was rescission of the settlement and resort to the original tort claim.

In *DiSabatino*, the court acknowledged the lack of Delaware precedent on the question posed: "whether a plaintiff who has settled a negligence suit for personal injuries may affirm that release and institute a cause of action on fraud." 635 F.Supp. at 351. The court thereupon proceeded to a prediction of Delaware law based primarily on an analysis of election of remedies under contract law. The court focused on the earlier Delaware decision of the Court of Chancery in *Hegarty* and *Eastern States* and concluded that their

holdings may be extended to the settlement of tort claims.

In concluding that the plaintiffs could sue the defendant for fraud without setting aside the release, the District Court advanced a three-pronged rationale. First, a settlement agreement is a contract for which consideration has passed to both sides; a plaintiff who is fraudulently induced to relinquish a claim has certainly lost something, and simply allowing for rescission of the agreement does not take into account the problems associated with the passage of time, *e.g.*, costs, procedural difficulties. Second, "simply as a matter of policy, this cause of action should exist"; otherwise, an unscrupulous party would have nothing to lose by defrauding a plaintiff to settle a tort claim. *DiSabatino*, 635 F.Supp. at 355. Third, a defrauded party may be entitled to punitive damages that would not be available if the original action was reinstated through rescission.

DuPont attempts to distinguish *DiSabatino* factually contending that the insurer/defendant was not a party to the original release and that, in any event, the terms of the release were not construed. We note, however, that the insurer apparently provided the consideration for the original release and was a beneficiary of its terms. Significantly, the holding in *DiSabatino* was directed to a dismissal motion under F.R.C.P. 12(b)(6), the same procedural posture giving rise to the certified question here. In both instances, the question before the court is whether the damages claim for fraud in the execution of the release is actionable under Delaware law, with the unstated premise that the plaintiffs are able to prove the fraud alleged.

We conclude that *DiSabatino*, both in its analysis of previous Delaware decisional law and its statement of the policy concerns supporting recognition of a damages option, is a correct foreshadowing of Delaware law. Accordingly, we endorse its basic holding.

A later state court decision is in a similar vein. The damages option for fraud was applied by Justice Duffy, specially assigned to the Superior Court in *Bergold v. Anglin*, Del.Super., C.A. No. 82C–SE–20, 1988 WL 25859, Duffy J. (Mar. 15, 1988), *aff'd Anglin v. Bergold*, Del.Supr., No. 185, 1988, 1989 WL 88625, Walsh, J. (June 26, 1989) (ORDER). *Bergold* involved a suit for fraud following the execution of a general release among joint owners of an aircraft. The plaintiff contended that the condition of the aircraft had been fraudulently represented by the defendant and sought to restore the costs of placing the aircraft in airworthy condition. Although there is no discussion of rescission as an alternative remedy, the court in *Bergold* ruled that the plaintiff's claim sounded in common law fraud based on false representation intended to induce the plaintiff to agree to the settlement. Notwithstanding the terms of the general release, the Court awarded damages arising from the underlying misrepresentations concerning the condition of the aircraft.

Based on the foregoing analysis of Delaware decisional law, we conclude that a party alleging fraud in the settlement of a tort claim may elect rescission and restoration to the *status quo ante* or, alternatively, may bring an action for the recovery of special, or expectancy, damages with retention of the settlement proceeds.[3] Accordingly, we answer the certified question in the negative.

---

**3.** Our answer to the certified question renders unnecessary any discussion concerning whether Plaintiffs could pursue a rescission remedy under Delaware law without restoring the opposing party to the *status quo ante*. Accordingly, we express no opinion as to whether, and under what circumstances, a court of equity might require restoration.