[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-14455

_____

D. C. Docket Nos. 98-02242-CV-ASG & 98-02243 CV-ASG

FLORIDA EVERGREEN FOLIAGE,
CHANG,
ALPHA BOTANICAL, INC.,
RICHARD A. GALLANT,
SPRENGERS & DRATH, INC.,
d.b.a. Mitchell Nursery Farms,
J. B. EVELYN,
VIVEROS TROPICALES S.A.,
ANDY COLE VALLE,
FLORIDA FOLIAGE EXCHANGE,
ANNA DEGALE,
ASSOCIATED GROWERS,
HERB KOSLOW,
CAMPBELL'S FOLIAGE, INC.,
PATRICK CAMPBELL,
PLANT & BLOOMS,
JOYCE WONG,
COSTA NURSERY,
MARIA COSTA SMITH,
BIJAN TROPICAL, INC.,
REZA KALANTARI/BIJAN,
d.b.a. Bijan Tropical, Inc.,
REZA KALANTARI,
REZA KALANTARI/GREEN,
d.b.a. Green Exotics,
RUBY A. TURVIN,
TURVIN TROPICALS,

LARRY LOPEZ,
BELC ENTERPRISES, INC.,
HATTAWAY,
CARIBE BROMELIAS, INC.,
FARM OP, INC.,
LIPMAN & LIPMAN, INC.,
WORLD AGRICULTURE, INC.,
f.k.a. Otomot, Inc.,

Plaintiffs-Counter-
Defendants-Appellants,

WAYNE TAI,

Plaintiff,

versus

E.I. DUPONT DE NEMOURS AND COMPANY,

Defendant-Counter-
Claimant-Appellee.

_____

No. 04-14506
_____

D. C. Docket Nos. 98-02242-CV-ASG & 97-00062 CV-ASG

FLORIDA EVERGREEN FOLIAGE,
CHANG,
ALPHA BOTANICAL, INC.,
RICHARD A. GALLANT,
SPRENGERS & DRATH, INC.,
d.b.a. Mitchell Nursery Farms, et al.,

MAZZONI FARMS, INC.,
a Florida Corporation,
JACK MARTIN GREENHOUSES, INC.,
f.k.a. M & M Ornamentals, Inc.,

Plaintiffs-Counter-
Defendants-Appellees,

Plaintiffs,

JACK MARTIN,

Plaintiffs,

WAYNE TAI,

Plaintiff,

versus

E.I. DUPONT DE NEMOURS AND COMPANY,
a Delaware corporation,

Defendant-Counter-
Claimant-Appellant,

CRAWFORD & COMPANY,
a Georgia corporation,

Defendant.

J.B. EVELYN,

Counter-Defendant-
Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(November 27, 2006)**

Before PRYOR, FAY and REAVLEY[*], Circuit Judges.

PER CURIAM:

## I. INTRODUCTION

This appeal arises from twenty-eight separate complaints filed between 1998 and 2000 that were consolidated for pretrial purposes. A consortium of Florida farmers, plant nurseries, and corporations ("Growers") appeals the denial of their motions to amend their complaints and the summary judgment entered against their claims of fraudulent settlement, spoilation, and racketeering. DuPont cross-appeals the summary judgment against its claim of breach of contract. The district court denied the Growers' motion to amend both because it was untimely and because it would have been futile. The district court granted summary judgment against the Growers' claims on the basis of our decision in Green Leaf Nursery v. E.I. DuPont de Newmours & Co., 341 F.3d 1292 (11th Cir. 2003). The district court granted summary judgment against DuPont on its claim of breach of contract

_____

[*] Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation.

on the basis of the opinion of the Delaware Supreme Court in E.I. du Pont de

Newmours & Company v. Florida Evergreen Foliage, 744 A.2d 457 (Del. 1999),

which answered a certified question of the district court.  We affirm.

## II. BACKGROUND

In the early 1990s, the Growers and other parties around the country sued

DuPont for damages caused by a DuPont fungicide, Benlate.  The Growers alleged

that Benlate was contaminated with a toxic chemical, sulfonylureas, that killed

their plants instead of the fungus on their plants.  Notwithstanding ongoing

accusations of discovery fraud and litigation misconduct against DuPont in

Growers' case and other cases, DuPont and the Growers settled.  The Growers

released DuPont from all claims and promised not to commence any action against

DuPont "based upon or in any way related to any causes of action, claims,

demands, actions, obligations, damages or liabilities which are the subject of this

Release."  The standard release also provided that the Growers would pay

attorney's fees and costs for DuPont were they to file claims contrary to the

release.

Following that settlement, events turned for the worse for DuPont.  In one of

the first Benlate cases to go to trial, In re E.I. du Pont de Nemours & Co.–Benlate

Litigation, 918 F. Supp. 1524 (M.D. Ga. 1995) ("the Bush Ranch case"), DuPont

5

was sanctioned and ordered to pay a fine of $100 million for committing fraud on the court, contempt of court and other discovery violations. The court found that DuPont and its independent testing company Alta Labs, with the knowledge of its counsel Alston & Bird, had falsified test results and other key corporate documents. Id. at 1556. After we reversed the district court in the Bush Ranch case on procedural grounds, see 99 F.3d 363 (11th Cir. 1996), the district court referred the matter to the United States Attorney for prosecution, and Dupont settled with the Bush Ranch parties for $ 11.25 million. See Marsuura v. Alston & Bird, 166 F.3d 1006, 1008 (9th Cir. 1999) (recounting the history of the Bush Ranch case).

After learning of the discovery infractions committed by DuPont in the Bush Ranch case, the Growers filed these lawsuits in the Southern District of Florida alleging fraudulent inducement, fraud on the court, RICO violations, and other causes of action. DuPont filed a counterclaim for breach of the settlement agreement. Because the settlement agreements were governed by Delaware law, the district court certified the following question to the Delaware Supreme Court: "Under Delaware law, does the release in these settlement agreements bar Plaintiffs' fraudulent inducement claims?" In E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage, 744 A.2d 457, the Delaware Supreme Court ruled that

the Growers were not unambiguously barred by the settlement agreement from complaining that they had been fraudulently induced to settle by misinformation during discovery.

On August 24, 2001, the district court granted judgment on the pleadings in favor of DuPont in one of the consolidated cases. An interlocutory appeal from that judgment was heard in this Court and, in Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F.3d 1292, we affirmed the district court. We held that Florida law provides absolute immunity from tort claims based on a party's conduct during the course of litigation. Id. at 1302. "Because DuPont's alleged misconduct occurred during the Underlying Litigation and during other Benlate litigation, according to [the Supreme Court of Florida], Florida law clearly provides an absolute immunity to DuPont for their alleged misconduct." Id. at 1303. We also affirmed on the alternative basis that, even if DuPont did not have an absolute immunity, the plaintiffs could not show that they reasonably relied on DuPont's misrepresentations in the light of the plaintiffs knowledge of its discovery violations in other cases. Id. at 1304-1308.

The Growers originally filed a motion to make identical amendments to their complaints two days before the district court heard oral argument on the motions considered in Green Leaf and while the district court was without jurisdiction to

grant leave to file an amended complaint. See id. at 1309. On remand, the Growers moved again to amend their complaints to allege new violations of the Florida RICO statute. DuPont moved for summary judgment in all the consolidated cases. The district court denied the Growers' motion to amend their complaints. 336 F. Supp. 2d 1239 (S.D. Fla. 2004). The district court reasoned that the Growers "could and should have made any necessary amendments to their pleadings years ago before this Court and DuPont expended enormous time and effort in addressing the merits of the claims asserted originally." Id. at 1255. The district court also held that the amended claims would be futile either because they would be "substantially similar" to claims rejected in Green Leaf or, alternatively, would fail to allege a RICO enterprise under Florida law. Finally, the district court adopted the determination of the Delaware Supreme Court that the settlement agreement did not bar the Growers from filing fraudulent inducement claims and granted summary judgment against DuPont on its breach of contract claim. Id. at 1290.

### III. STANDARD OF REVIEW

We review the denial of a motion to amend a complaint for an abuse of discretion. Campagnoni v. United States, 173 F.3d 1369, 1371 n.7 (11th Cir. 1999). "However, when the district court denies the plaintiff leave to amend due to futility, we review the denial de novo because it is concluding that as a matter of law an

8

amended complaint 'would necessarily fail.'" Freeman v. First Union Nat'l., 329 F.3d 1231, 1234 (11th Cir. 2003) (citation omitted). We review a summary judgment de novo. In re Optical Techs., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001).

## IV. DISCUSSION

Our resolution of this appeal begins with a review of the denial of the Growers' motion to amend their complaint. If the district court abused its discretion in denying the Growers' motions to amend their complaints, then the district court also erred by granting partial summary judgments, one for the Growers and the other for DuPont, based on the allegations of the Growers' unamended complaints. For that reason, we divide our discussion in three parts: first, we review the denial of the Growers' motion to amend their complaints; second, we review the partial summary judgment for DuPont on the Growers' claims; and, third, we review the partial summary judgment in favor of the Growers on the breach of contact claim of DuPont.

*A. The District Court Did Not Abuse Its Discretion By Denying the Growers'*
*Motions to Amend Their Complaints.*

"A party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "[U]nless a substantial reason exists to deny leave

9

to amend, the discretion of the District Court is not broad enough to permit denial." Shipner v. Eastern Airlines, Inc., 868 F.2d 401, 207 (11th Cir. 1989). "[A] motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000) (citations and internal quotation marks omitted). "The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." Bryant v. Dupree, 252 F.3d 1161, 1164 (11th Cir. 2003). The district court denied Growers' motion to amend because of untimeliness and futility. We address each ground in turn.

The Growers argue that the district court denied their motions to amend their complaints solely based on the "lengthy nature of the litigation" or "mere passage of time." We disagree. The district court referenced the length of time between the original complaints and the Growers' motion to amend to explain its finding of undue delay. See Maynard v. B. of Regents of Div. of Univs. of Fla. Dep't of Educ., 342 F.3d 1281, 1287 (11th Cir. 2003) ("Because we conclude that [the plaintiff] has failed to show good cause for the eleventh hour amendment, we find that the district court did not abuse its discretion by enforcing its timetable for

10

disposition of the case."). The district court found, and the Growers admitted, that they knew about the possibility of Florida RICO claims when they filed their original federal complaints. In fact, the Growers' liaison counsel represented parties who had argued these very claims against DuPont to a jury in state court.

The district court reasonably found that the Growers waited too long to file properly a motion to amend their complaints. The Growers did not move to amend their complaints until after the district court denied a motion to dismiss as to all the claims, granted judgment on the pleadings as to one party, certified questions to the Supreme Courts of Delaware and Florida, and certified its judgment on the pleadings for interlocutory review in this Court. See, e.g., Gregory v. Mitchell, 634 F.2d 199, 202-03 (5th Cir. Jan. 1981) (affirming denial of leave to amend sought after motion to dismiss and motion for summary judgment had been taken under advisement). Moreover, the Growers offered no good reason for their delay.

The district court also reasonably found that to allow an amendment at this stage of the litigation would prejudice DuPont in defending its concurrent federal and state court actions. Parties to complex multi-jurisdictional litigation often seek to leverage final decisions in one jurisdiction in cases still pending in other jurisdictions, but there are limits to how long litigants can delay federal proceedings in the hope that concurrent litigation elsewhere will produce favorable intervening

11

precedents. The district court found that "[t]he prejudice to DuPont results from the prejudice to the justice system itself. Failing to raise these issues previously . . . places the DuPont, the Eleventh Circuit, and myself in a position where issues in this case are being resolved in a piecemeal fashion with no logical conclusion." 336 F. Supp. 2d at 1257. The liberal amendment policy of Rule 15(a) does not countenance "the old sporting theory of justice" or the use of the federal courts as a forum for testing alternate legal theories seriatim. Freeman v. Continental Gin Co., 381 F.2d 459, 469-70 (5th Cir. 1967); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1489 (2d ed. 1987).

The district court did not abuse its discretion by denying the Growers' motion to amend as untimely. We need not address the alternative ground of futility. We affirm the denial of the Growers' motion to amend.

### B. Summary Judgment Against The Growers Was Proper.

Because there is no way to differentiate the claims that we addressed in Green Leaf from the Growers' claims in this case, the Growers do not even attempt to do so. Instead, they directly challenge three of our conclusions in Green Leaf. We are not at liberty to change our mind as to any of these conclusions. See United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993) ("It is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first

12

panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").

First, in Green Leaf, we held that the plaintiffs' fraud claims failed because of the absolute immunity for litigation conduct under Florida law. "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 608 (Fla. 1994). The Growers argue that our decision has been undermined by the passage of time.

The Growers argue that, since Green Leaf, Florida litigation immunity has been curtailed. In Ingalsbe v. Stewart Agency, 869 So.2d 30 (Fla. Dist. Ct. App. 2004), the Florida Court of Appeals for the Fourth District allowed the attorneys who represented a plaintiff in a lemon law suit to bring an action for tortious interference on the grounds that the settlement by the automobile dealership with the plaintiff interfered with the attorney's fee agreement. The court concluded that "[n]o legitimate interest of Dealer and Client in settling their dispute gives them a privilege to interfere with Lawyer's fee contract in such a way as to restrict the fee due to only the lowest among the contract's reasonable alternatives." 869 So. 2d at

13

The argument of the Growers fails. In contrast with Ingalsbe, the Growers allege tortious conduct against an opposing litigant premised on the manner in which it conducted core litigation activities. The allegations of the Growers are distinct both in kind and degree from the allegations of tortious interference with professional activities addressed in Ingalsbe. In Jackson v. BellSouth Telecommunications, 372 F.3d 1250 (11th Cir. 2004), we applied the Florida litigation immunity to a settlement fraud claim. We held that "[t]he rationale underlying Ingalsbe is not implicated here, where the appellants have not alleged any interference with their occupations or other professional activities." Id. at 1276 n.26.

Second, the Growers erroneously challenge another aspect of our earlier decision. In Green Leaf, we also held that the plaintiffs could neither prove common law fraud nor mail and wire fraud as a matter of law because they could not have reasonably relied on any alleged misrepresentation by DuPont. 341 F.3d at 1305. The Growers argue that reliance is not an element of "negative fraud" or concealment, but the Growers cite no Florida law to support this theory. The Growers also provide no basis for differentiating their complaints from the allegations that DuPont "intentionally concealed Benlate's defects" that we

14

considered in <u>Green Leaf</u>.  We reiterate our previous ruling: "Because Plaintiffs were represented by counsel, were in an antagonistic and distrusting relationship with DuPont, and settled litigation that included accusations of fraud and other dishonest conduct by DuPont, [the Growers] could not reasonably or justifiably rely on any of DuPont's misrepresentations."  <u>Id</u>. at 1305.

Finally, in <u>Green Leaf</u>, we held that a plaintiff must allege the destruction of evidence as opposed to the concealment of evidence to state a claim for spoilation of evidence under Florida law.  <u>Id</u>. at 1308-09.  Without citing controlling authority, the Growers argue that "under Florida law, a spoilation plaintiff need not allege and prove that the defendant destroyed evidence."  We disagree.  "Concealment of evidence . . . does not form a basis for a claim of spoilation."  <u>Jost v. Lakland Regional Med. Ctr</u>., 844 So. 2d 656, 658 (Fla. Dist. Ct. App. 2003).  We affirm the partial summary judgment in favor of DuPont.

*C.  Partial Summary Judgment in Favor of the Growers on the Breach of Contract Claim of DuPont Was Proper.*

DuPont argues that the Growers breached the settlement agreement by filing suit based on its conduct in the underlying litigation, but the district court granted summary judgment in favor of the Growers on this issue.  The settlement agreements provide that they are governed by Delaware law.  Responding to a

15

question certified by the district court in this case, the Supreme Court of Delaware ruled that the general release of claims in the settlement agreement did not unambiguously bar claims premised on fraudulent inducement to settle. E.I Dupont v. Florida Evergreen Foliage, 744 A.2d 457.

Although DuPont and the Growers agree that Florida Evergreen Foliage is controlling authority, they urge divergent interpretations. The Growers argue, on the one hand, that the Delaware Supreme Court created a bright-line rule that a claim to fraudulent inducement to settle can only be waived by a specific release. The Growers base their argument on the following statements in Florida Evergreen Foliage: "At a minimum, if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud" and "the absence of a specific reference to the actionable fraud limits the scope of the general release in this case." Id. at 461. DuPont argues, on the other hand, that the requirement of specific language only applies to ambiguous settlement agreements without other interpretative evidence. Also quoting Florida Evergreen Foliage, DuPont argues that as "the party seeking enforcement of the [ambiguous] release" it should be allowed to offer extrinsic evidence that "the released fraud claim was within the contemplation of the releasing party." Id. at 461.

16

We agree with the Growers' reading of <u>Florida Evergreen Foliage</u>. The Supreme Court of Delaware explained that the Growers' claim for fraudulent inducement to settle is a separate claim from the underlying action and not covered by the general release and covenant not to sue. Because the alleged fraudulent conduct "subsists separate from, and necessarily occurred after," the conduct forming the basis of the underlying litigation, a specific waiver of a claim of fraudulent inducement was necessary to release that claim. <u>Id</u>. at 462; <u>see also</u> <u>Marsuura</u>, 166 F.3d at 1010-11 (predicting that the Delaware Supreme Court would impose a clear statement requirement for the release of fraudulent inducement claims). The decision of the Delaware Supreme Court forecloses the claim of DuPont that the Growers breached their agreements.

## V. CONCLUSION

The judgment of the district court is **AFFIRMED**.

17