**CONDITIONALLY GRANT and Opinion Filed May 11, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00115-CV**

**IN RE COMMERCIAL CREDIT GROUP INC. AND ARTHUR CASTANON, Relators**

**Original Proceeding from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-05562-2020**

## MEMORANDUM OPINION

Before Justices Schenck, Nowell, and Garcia
Opinion by Justice Garcia

In this original proceeding, relators seek a writ of mandamus asking this Court to vacate the trial court's order denying their Rule 91a motion to dismiss. After reviewing the petition, the real party in interest's response, and the mandamus record, we conditionally grant the writ.

### BACKGROUND

The underlying suit arises out of the purchase and financing of a trailer that was subsequently discovered to be a different type of trailer than originally advertised. The purchaser and real party in interest, Heavy Haul XS ("Heavy Haul") sued relators Commercial Credit Group, Inc. ("CCG") and Arthur Castanon

("Castanon") for, inter alia, fraud and breach of contract. Relators responded that the claims had been released and the transactions ratified and moved to dismiss. The trial court's denial of that motion is at issue here.

## A.     The Purchase

In 2018, Castanon, a CCG employee, assisted Heavy Haul with the purchase of a trailer that had been advertised as a 2010 Cozad. Heavy Haul financed the purchase through CCG, executing a promissory note and security agreement (the "Purchase Note").

On April 12, 2019, after having the trailer weighed to obtain DOT permits, Heavy Haul discovered that the trailer was a Joshua trailer, not a 2010 Cozad. Heavy Haul subsequently met with Castanon to discuss the costs of converting the trailer and refinancing the loan to cover the conversion cost.

The parties reached an agreement and on July 25, 2019, Heavy Haul entered into another promissory note and security agreement with CCG (the "Refinance Note"). Under the Refinance Note, Heavy Haul "waive[d] any claim(s) whatsoever [it] may have had against [CCG]." Heavy Haul also executed a stand-alone release in connection with the Refinance Note (the "Refinance Release").

## B.     The Refinance Release

The Refinance Release, dated July 25, 2019, provides for a complete release of any existing or potential claims:

> [Heavy Haul] hereby **FOREVER, FINALLY, FULLY AND COMPLETELY RELEASES**, RELIEVES, ACQUITS, REMISES, AND DISCHARGES CCG and its successors, predecessors and assigns, affiliated companies, subsidiary companies, parent companies, past and present employees, agents, partners, representatives, attorneys, accountants, directors, shareholders, officers, and any other person acting in his or her individual or representative capacities (the "Releasees") **from any and all liens, losses, claims, debts, liabilities, demands, obligations, acts, agreements, litigation, reports, costs and expenses (including, without limitation, attorneys' fees), damages, injuries, suits, actions or causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, from the beginning of time until the date of this Release.**

(Emphasis added).

## C.    The Amendment

In April 2020, Heavy Haul allegedly received further confirmation that the trailer was not a Cozad. Consequently, it negotiated an amendment to the Refinance Note (the "Amendment").

The Amendment, executed on June 24, 2020, states that the Refinance Note and Release "are ratified and confirmed and shall remain in full force and effect." Heavy Haul also "acknowledges, warrants and agrees [its] indebtedness [to CCG] is a valid and enforceable obligation . . . without any defense, offset, or counterclaim whatsoever . . . ."

The Amendment also includes another comprehensive release of any potential claims Heavy Haul had or might have had against CCG:

> [Heavy Haul] hereby **FOREVER, FINALLY, FULLY AND COMPLETELY RELEASES**, RELIEVES, ACQUITS, REMISES, AND DISCHARGES CCG and its successors, predecessors and

assigns, affiliated companies, subsidiary companies, parent companies, past and present employees, agents, partners, representatives, attorneys, accountants, directors, shareholders, officers, and any other person action in his or her individual or representative capacities (the "Releasees"), **from any and all liens, losses, claims, debts, liabilities, demands, obligations, acts, agreements, litigation, reports, costs and expenses (including, without limitation, attorneys' fees), damages, injuries, suits, actions or causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, from the beginning of time until the date of this Release.**

(Emphasis added).

## D.     The Lawsuit

Several months after it executed the Amendment, Heavy Haul sued CCG and Texhoma Commercial Titles, LLC.[1] Heavy Haul's petition seeks recovery for CCG's alleged conduct before Heavy Haul entered into the releases, including:

1) Fraud and Fraudulent Inducement: Defendants allegedly made "false and material representations about the Trailer's year, make, weight, and vehicle identification number."

2) Fraud by Nondisclosure: Defendants allegedly "concealed or failed to disclose material facts related to the Trailer, including but not limited to its year, make, weight, and other aspects of its history."

3) Negligent Misrepresentation: Defendants allegedly misrepresented "the Trailer was a 2010 Cozad and properly titled."

4) Money Had and Received and Conversion: CCG is allegedly not entitled to money paid under the contracts related to the Trailer.

5) Civil Conspiracy: Defendants allegedly conspired to conceal the nature and character of the Trailer.

6) Breach of Contract: CCG allegedly breached the Purchase Note, Refinance Note, and Amendment by misrepresenting material terms of

---

[1] Texhoma is not a party to this original proceeding.

those contracts—all of which concerned the nature and character of the Trailer.

CCG answered and asserted several affirmative defenses, including release, waiver, laches, and ratification. CCG also counterclaimed for breach of contract and asserted third-party claims against the two individuals who incorporated and operate Heavy Haul.

**E. CCG's Motion to Dismiss**

CCG also moved to dismiss Heavy Haul's claims pursuant to Rule 91a. *See* TEX. R. CIV. P. 91a. The motion challenged Heavy Haul's claims for fraud and fraudulent inducement, fraud by nondisclosure, negligent misrepresentation, money had and received, conversion, conspiracy, and breach of contract. CCG asserted that all these claims relate to the alleged fraud concerning the make and model of the trailer that Heavy Haul admitted that it discovered on April 12, 2019. According to CCG, Heavy Haul released these claims.

CCG's motion notes that Heavy Haul's petition affirmatively pleads that the contracts containing the releases are valid and enforceable contracts. The motion further argues that Heavy Haul ratified and waived any alleged misrepresentation by modifying the first promissory note and continuing to make payments after the alleged fraud. Consequently, CCG argued that Heavy Haul's claims have no basis in law and should be dismissed.

Heavy Haul opposed the motion, arguing: (i) the petition provided fair notice of the claims which "implicate fact questions about intent" and (ii) the "contract that

contains the general release was procured by fraud." Heavy Haul's petition, however, does not allege that the releases were procured by fraud.

The trial court conducted a hearing on the motion. After the hearing, Heavy Haul sought leave to amend its petition to allege fraudulent inducement to the Refinance Note.[2] The trial court denied CCG's motion to dismiss without specifying its reasoning and awarded Heavy Haul its attorney's fees.

## ANALYSIS

To obtain mandamus relief, relators must show both that the trial court has clearly abused its discretion and that they have no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Mandamus review is available when a trial court's misapplication of the law results in the denial of a motion to dismiss under Rule 91a. *See In re Hous. Specialty Ins. Co.*, 569 S.W.3d 138, 139 (Tex. 2019) (orig. proceeding); *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding). In such a case, "mandamus relief is appropriate to spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Hous. Specialty Ins.*, 569 S.W.3d at 142.

---

[2]Specifically, the hearing occurred on January 14, 2021 and the motion for leave to amend was filed on January 21. On January 28, the same day as the court's order denying the motion, Heavy Haul filed supplemental briefing and argued that the "third note," defined collectively as "a writing and amendment" was procured by fraud. The requested pleading amendment and related arguments, however, were untimely and not properly before the court. *See* TEX. R. CIV. P. 91a.5 (b)–(c) (court must not consider amendment not filed at least 3 days before the hearing).

–6–

A trial court should dismiss a claim based on the pleadings if "it has no basis in law or fact." TEX. R. CIV. P. 91a.1 "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* This determination is "based solely on the pleading of the cause of action, together with any pleading exhibits" the plaintiff attaches to the petition. TEX. R. CIV. P. 91a.6.

Rule 91a "permits motions to dismiss based on affirmative defenses if the allegations, taken as true, together with the inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020). In other words, if a "trial court [does] not need to look outside [the] pleadings to determine whether [a pleaded defense] applied to the alleged facts," then a Rule 91a motion is proper to seek a prompt legal determination about whether the defense bars recovery. *Id.*; *see also Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG,* 567 S.W.3d 725, 736–41 (Tex. 2019) (considering federal preemption affirmative defense in the context of a Rule 91a motion); *Estate of Mathis*, 543 S.W.3d 927, 931–32 (Tex. App.—Eastland 2018, no pet.) (holding that "[w]ithout a claim asking the trial court to revoke the [release in the] settlement agreement," the petition "did not have a basis in law.").

The Purchase Note, the Refinance Note, and Amendment all contain Delaware choice of law provisions. In applying a contractual choice-of-law provision, Texas courts apply the substantive law of the choice-of-law provision but

apply Texas law to matters of remedy and procedure. *McAffee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 824 (Tex. App.—Dallas 2010, no pet.); *CMA-CGM (America), Inc. v. Empire Truck Lines, Inc.*, 416 S.W.3d 495, 507 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Therefore, Delaware law applies to the release, but Texas law governs the motion to dismiss.

Delaware courts recognize general releases. *Deuley v. DynCorp. Int'l, Inc.,* 8 A.3d 1156, 1163 (Del. 2010). Under Delaware law, a general release is one which is intended to cover everything—what the parties have in mind, as well as what they do not have in mind. *Corporate Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003). "In construing a release, the intent of the parties as to its scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document." *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982). If the language of the release is clear, it will be given effect. *Corporate Prop.*, 817 A.2d at 789.

A valid release operates as a complete bar to any later action based upon matters covered in the release. *Seven Invs. LLC v. AD Capital, LLC*, 32 A.3d 391, 396 (Del. Ch. 2011). Such releases "are an important tool for settling disputes precisely because they are designed to provide 'complete peace' among the parties and allow them to move on with certainty about the resolution of released matters." *Id*. at 397. Therefore, if a claim falls within the plain language of the release, the

claim should be dismissed. *See, e.g., Deuley*, 8 A.3d at 1163–65 (affirming Rule 12(b)(6) dismissal based on release).

When a plaintiff asserts that the release itself was induced by the defendant's fraud, "the party seeking enforcement of the release bears the burden of proving that the released fraud claim was within the contemplation of the releasing party."[3] *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del. 1999). In *E.I. Dupont*, the Delaware Supreme Court considered whether a general release of all claims, whether known or unknown, in a settlement agreement, following a preamble alluding to the action being settled, prevented a future claim for fraudulent inducement. Focusing on whether a releasee should be held to "release a claim for fraud in the execution of the release itself," the court decided it should not. *Id.* 460. To this end, the court held that "if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud." *Id*. at 461.

In *Seven Investments, LLC v. AD Capital, LLC*, the court discussed the *E.I. Dupont* general rule, and clarified that, as with other circumstances where the defendant has the burden of proof, a fraud allegation does not preclude the granting of a motion to dismiss based on release. *See Seven Investments, LLC*, 32 A.3d at

---

[3] Fraudulent inducement in Delaware requires proof of: "1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result." *Lord v. Sander*, 748 A.2d 393, 402 (Del. 2000).

–9–

396–97 (discussing in the context of a 12(b)(6) motion to dismiss). The court noted that the *DuPont* case does not require that "the Court credit a bare allegation that a release was induced by fraud and therefore deny a motion to dismiss in the face of (i) the plain language of the release or (ii) allegations in the complaint that establish the defense or rule out any other reasonably conceivable inference." *Id.* at 397. Instead, when a motion to dismiss relies upon affirmative defenses, such as waiver and release, "the Court may dismiss a claim if the plaintiff includes in its pleadings facts that incontrovertibly constitute an affirmative defense to a claim." *Id.* The court then concluded that the fraud claim at issue was included in the general release. *Id.* at 398.

Here, the pleadings include facts that incontrovertibly constitute a defense to Heavy Haul's claims. The petition alleges that "the contract that contains the release was procured by fraud." The alleged fraud is based on Heavy Haul's April 12, 2019 discovery that the trailer was a Joshua and not a Cozad. This discovery was the impetus for the Refinance Agreement and then the Amendment in which Heavy Haul released all claims arising out of the alleged fraud. Because Heavy Haul sought and negotiated refinancing of its indebtedness based on the fact that the trailer was not a Cozad, the released claims were clearly within Heavy Haul's contemplation as the releasing party. *See E.I. Dupont*, 744 A.2d at 461. Moreover, the plain language of the releases clearly encompasses and bars Heavy Haul's claims related to its initial

–10–

purchase of the trailer. *See Adams*, 452 A.2d at 156; *Seven Investments*, 32 A.3d at 396.

Heavy Haul argues that the issue is moot because it filed an amended petition prior to the petition for mandamus. As previously noted, the amended petition was not properly before the court at the time of the hearing. Further, it is axiomatic that if the dismissal motion had been granted, there would be no amended petition.[4]

In addition, Heavy Haul argues that there are fact questions concerning "the requisite intent for ratification . . . fraud and duress in relators' inducement of the purported release . . . [and] the enforceability of the purported release." The pleadings demonstrate otherwise.

It is undisputed that Heavy Haul's claims are predicated on its April 2019 discovery that the trailer was not a Cozad. The pleadings further demonstrate that Heavy Haul subsequently released all claims arising out of this discovery and did so in two successive transactions. The releases are comprehensive, covering all claims from the beginning of time until the date of the release. In the Amendment, Heavy Haul acknowledges that its indebtedness is a valid and enforceable obligation "without any defense offset, or counterclaim whatsoever." The trial court need not

---

[4] Our record includes the motion for leave to amend and the amended petition but does not include an order granting leave to amend. But even if we consider the untimely filed amendment, it does not affect our analysis. The amended petition claims Heavy Haul was induced to enter the first and third notes on March 26, 2020. But the alleged fraud is still predicated on Heavy Haul's April 2019 discovery that the trailer was not a Cozad. The pleading also references (and thereby acknowledges) the Amendment (executed on June 24, 2020) but does not allege fraud in connection with the Amendment. The release in the Amendment, as with all prior releases, encompasses all of Heavy Haul's claims.

look outside the pleadings to conclude that relators' affirmative defense of release bars Heavy Haul's recovery. *See Bethel*, 595 S.W.3d at 656.

Finally, Heavy Haul insists that relators have not demonstrated that they lack an adequate appellate remedy because they have at least four more opportunities to re-urge their affirmative defenses in the trial court, in addition to traditional appellate remedies thereafter. This argument is not persuasive. Requiring relators to engage in extensive litigation over claims that have no basis in law or fact would result in the unnecessary expenditure of time and other resources and contravenes the purpose of Rule 91a. Such senseless expenditure does not constitute an adequate remedy on appeal. *See Hous. Specialty Ins.*, 569 S.W.3d at 142.

Heavy Haul's claims are within the scope of the releases and have no basis in law or fact. *See* TEX. R. CIV. P. 91a. There is no adequate remedy on appeal. Therefore, the trial court abused its discretion in denying the motion to dismiss and relators are entitled to mandamus relief. *See Prudential*, 148 S.W.3d at 135–36.

Relators may also be entitled to attorney's fees. Rule 91a.7 provides that "the court may award the prevailing party . . . all costs and necessary attorney fees . . . ."[5] *See* TEX. R. CIV. P. 91a.7. Therefore, the trial court should convene a hearing to

---

[5] The Rule previously provided that an attorney's fees award to the prevailing party was mandatory. *See Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 187 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). But the Rule was amended for cases commenced after September 1, 2019 to say that the court "may" award fees, rather than the court "must" award fees as required under the former version of the Rule. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 30.021; Tex. Sup. Ct. Order, Misc. Docket No. 19-9108 (eff. Sept. 1, 2019); TEX. R. CIV. P. 91a.7.

consider evidence regarding costs and fees to determine the amount, if any, to award relators as the prevailing parties. *See* TEX. R. CIV. P. 91a.7.

## CONCLUSION

We conclude the trial court abused its discretion by denying relators' motion to dismiss. We conditionally grant relators' petition for writ of mandamus and direct the trial court to issue a written order, within fifteen (15) days of the date of this opinion (i) vacating its January 28, 2021 order denying relators' motion to dismiss, (ii) granting relators' motion to dismiss and dismissing the claims of the real party in interest, and (iii) setting a hearing to determine the amount, if any, of costs and reasonable attorney's fees relators are entitled to recover. We are confident the trial court will comply, and the writ will issue only if it fails to do so.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210115F.P05