# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MEDLINK HEALTH SOLUTIONS, ) 
LLC AND OMEGA CAPITAL )
MANAGEMENT PARTNERS LLC, )
                                     )
                 Plaintiffs, )
                                      )
            v.                   )      **C.A. No. N22C-09-799 FJJ**
                                      )
JL KAYA, INC., JOSE A. )
LAGARDERA, THE FLORIDA )
BUSINESS LAW FIRM, P.A. D/B/A )
THE BENHAYOUN LAW FIRM, )
AND ABRAHAM BENHAYOUN )
                                      )
                Defendants. )

Submitted: January 18, 2023
Decided: February 9, 2023

*Upon Defendants' Motion to Dismiss,*
**GRANTED in part, DENIED in part.**

## MEMORANDUM OPINION AND ORDER

Aman Kaushik Sharma, Esquire, The Sharma Law Firm, LLC, 1007 N. Orange St., 4th Floor, Wilmington, Delaware 19801, Attorney for Plaintiffs.

David A. Felice, Esquire, Bailey & Glasser LLP, 2961 Centerville Road, Suite 302, Wilmington, Delaware 19808, Ari S. Casper, Esquire, Ralph S. Tyler, Esquire, The Casper Firm, LLC, 400 E. Pratt Street, Suite 903, Baltimore, Maryland 21202 Attorneys for Defendants.

**JONES, J.**

Plaintiffs Medlink Health Solutions, LLC ("Medlink") and Omega Capital Management Partners, LLC ("Omega" and together with Medlink, "Plaintiffs") allege Defendants JL Kaya, Inc. ("JL Kaya"), JL Kaya's vice president Jose A. Lagardera, and JL Kaya's lawyer and law firm, Abraham Benhayoun and The Florida Business Law Firm, P.A. d/b/a The Benhayoun Law Firm ("BLF") breached a settlement agreement (the "Settlement Agreement") entered into by only JL Kaya and Medlink for the purpose of dissolving their previous contractual relationship.

Two years after that Settlement Agreement was entered into, Plaintiffs allege Defendants breached that Agreement and fraudulently induced Plaintiffs into entering that Agreement. Defendants assert Plaintiffs' Complaint should be dismissed under Superior Court Rules 12(b)(1), 12(b)(2), and 12(b)(6).

For the reasons set forth below, the Court **GRANTS in part**, and **DENIES in part**, Defendants' motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

JL Kaya is a supplier of goods to the federal government.[1] JL Kaya contracted with Medlink to assist it in fulfilling a government contract.[2] Because of disputes in fulfilling the contract, the parties agreed to sever their relationship.[3] That severance

---

[1] Compl. ¶ 10, Sept. 30, 2022 (D.I. 1).
[2] *Id.* ¶¶ 11-12.
[3] *Id.* ¶ 13.

was documented in the Settlement Agreement between JL Kaya and Medlink.[4]

Before Plaintiffs brought this current action, Omega brought a similar action against JL Kaya and Lagardera in the Court of Chancery.[5] That action ended when the parties stipulated to dismissal.[6]

A few weeks later, Omega filed the current action with Medlink included as a co-plaintiff and BLF and Mr. Benhayoun included as co-defendants.[7] In this action Plaintiffs have asserted four claims against Defendants: (1) fraud in the inducement, (2) breach of contract, (3) specific performance – accounting, and (4) aiding and abetting fraud.[8]

Defendants have moved to dismiss the Complaint under Superior Court Civil Rules 12(b)(1), 12(b)(2), and 12(b)(6).[9]

## II. STANDARD OF REVIEW

### A. *Rule 12(b)(6)*

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of

---

[4] *Id.* ¶ 14. The Complaint states that Omega was a party to the Settlement Agreement, but the Settlement Agreement does not list Omega as a party. D.I. 12 (the "Settlement Agreement").
[5] Compl., C.A. No. 2022-0458-SG (Del. Ch.) (D.I. 1) (Del. Ch. May 26, 2022).
[6] Order of Dismissal without Prejudice, C.A. No. 2022-0458-SG (D.I. 20) (Del. Ch. Sept. 12, 2022).
[7] *See* Compl.
[8] *Id.* ¶¶ 40-71.
[9] D.I. 8.

circumstances susceptible of proof under the complaint."[10] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[11]

"If any reasonable conception can be formulated to allow [p]laintiffs' recovery, the motion must be denied."[12] If the claimant may recover under that standard, then the Court must deny the motion to dismiss.[13] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[14]

Furthermore, Delaware law requires those pleading fraud and misrepresentation to do so with particularity—a heightened pleading standard.[15] To satisfy Rule 9(b), a fraud or misrepresentation claim must allege:

> (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations. Essentially, the

---

[10]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018) (cleaned up) (quoting Super. Ct. Civ. R. 12(b)(6)).
[11]  *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).
[12]  *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).
[13]  *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[14]  *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004) (citation omitted).
[15]  Super. Ct. Civ. R. 9(b).

plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim.[16]

Moreover, under Delaware law, "[e]ven if the conduct pled . . . is separate and distinct, it must still plead separate damages. Failure to do so is an independent ground for dismissal."[17]

## B. Rule 12(b)(1)

A party may move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.[18] "'Whenever it appears by suggestion of the parties or otherwise' that the Court lacks subject matter jurisdiction, the Court must dismiss the claim."[19] In considering a Rule 12(b)(1) motion, the Court "need not accept [the plaintiff's] factual allegations as true and is free to consider facts not alleged in the complaint."[20] Accordingly, whereas the movant "need only show that the Court lacks jurisdiction,"[21] the non-movant bears the "far more demanding" burden "to prove

---

[16]   *Abry P'rs V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

[17]   *inVentiv Health Clinic, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *8 (Del. Super. Jan. 26, 2021) (citing *Cornell Glasgow, LLC v. La Grange Props. LLC*, 2012 WL 2106945, at *9 (Del. Super. June 6, 2012)).

[18]   Super. Ct. Civ. R. 12(b)(1).

[19]   *KT4 P'rs LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *24 (Del. Super. June 24, 2021) (alteration and emphasis omitted) (quoting Super. Ct. Civ. R. 12(h)(3)).

[20]   *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (internal quotation marks omitted); *see Nelson v. Russo*, 844 A.2d 301, 302 (Del. 2004) ("In deciding whether the Superior Court has subject matter jurisdiction, we must look beyond the language in the complaint . . . ."); *see also Texcel v. Com. Fiberglass*, 1987 WL 19717, at *2 (Del. Super. Nov. 3, 1987) ("The gravamen of subject matter jurisdiction . . . lies not in the pleading but in the existence of facts necessary for the court to exercise its jurisdiction.").

[21]   *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Dec. 15, 2015), *aff'd* 2016 WL 4938890 (Del. Sept. 16, 2016).

jurisdiction exists."[22]

## *C.* **Rule 12(b)(2)**

"A non-resident defendant may move to dismiss for lack of personal jurisdiction under this Court's Civil Rule 12(b)(2)."[23] "Generally, a plaintiff does not have the burden to plead in its complaint facts establishing a court's personal jurisdiction over [a non-resident] defendant."[24] But when 12(b)(2) is invoked, the plaintiff does carry this burden.[25] Where no discovery has been conducted, plaintiff's burden is a *prima facie* one.[26] As such, "the Court 'is not limited to the pleadings and can consider affidavits, briefs of the parties,' and the record as a whole."[27] "Still, unless contradicted by affidavit, the Court must (1) accept as true all well-pleaded allegations in the complaint; and (2) construe the record in the light most favorable to the plaintiff."[28]

---

[22] *Appriva*, 937 A.2d at 1284 n.14 (internal quotation marks omitted).

[23] *Green Am. Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *3 (Del. Super. June 1, 2021) (citing Del. Super. Ct. Civ. R. 12(b)(2)).

[24] *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 800 (Del. Ch. 2020) (internal quotation marks and citation omitted). Precedent resolving dismissal motions filed under the Court of Chancery's analogous rules is usually of equal influence when addressing those filed under this Court's. *See, e.g.*, *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. June 29, 2020) (finding no difference in the Rule 12(b)(2) context and collecting authority); *see also Green Am. Recycling*, 2021 WL 2211696, at *3 n.40.

[25] *Green Am. Recycling*, 2021 WL 2211696, at *3 (citing *AeroGlobal Capital Mgmt, LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437-38 (Del. 2005)).

[26] *Id.*; *see also id.* at *3 n.42.

[27] *Id.* at *3.

[28] *Id.* (internal quotation marks and citations omitted); *see also id.* at *3 ns.44-45.

## III. PARTIES' CONTENTIONS

### A. *Defendants' Contentions*

As a threshold matter, Defendants assert Omega lacks standing to bring its claims because Omega was not a party to the settlement agreement.[29]

Under Rule 12(b)(1), Defendants assert the Court lacks subject matter jurisdiction over Plaintiffs' claim for specific performance – accounting (Count III) because it sounds in equity.[30]

Under 12(b)(2), Defendants assert the Court lacks personal jurisdiction over Mr. Lagardera, BLF, and Mr. Benhayoun because they have no connection to Delaware.[31]

Under 12(b)(6), Defendants assert the fraudulent inducement claim (Count I), the breach of contract claim (Count II), and the aiding and abetting claim (Count IV) are not well pled.[32]

### B. *Plaintiffs' Contentions*

In response to Defendants' motion to dismiss, Plaintiffs argue that Defendants present "a string of cites to cases which involve *general legal principals*, rather than

---

[29] Mot. to Dismiss at 2-5, Dec. 9, 2022 (D.I. 8).
[30] *Id.* at 12.
[31] *Id.* at 5-7.
[32] *Id.* at 7-14.

to cites to cases that approximate the factual circumstances of the case at bar."[33]

Instead of responding to Defendants' specific arguments, Plaintiffs make the global argument that Defendants failed to cite a case where "one of the parties to a Settlement Agreement writes themselves into the Agreement wherein it/they are charged with specific duties and/or responsibilities that are directly tied to the consideration for the Settlement Agreement, itself."[34]  Plaintiffs ask the Court to ignore Defendants legal arguments and dismiss the motion because Plaintiffs' Complaint is "[t]he only way to hold the Law Firm (and its attorneys) accountable for their actions . . . ."[35]

## IV. DISCUSSION

### A. *Omega Lacks Standing to Prosecute Its Claims.*

Standing is a threshold issue the Court must consider when confronted with it.[36]  When standing is challenged, "[t]he party invoking the jurisdiction of a court bears the burden of establishing the elements of standing."[37]

Defendants challenge Omega's standing because it was not a party to the

---

[33]  Response ¶ 28, Jan. 10, 2023 (D.I. 17). "In making this Response, the Plaintiffs argue from the perspective that they do not need to regurgitate basic legal principals of which the Court is well aware." *Id.*
[34]  *Id.* ¶ 29 (emphasis omitted).
[35]  *Id.* ¶ 31.
[36]  *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021).
[37]  *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1109 (Del. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Settlement Agreement.[38] Plaintiffs do not respond to this challenge and instead ask the Court to look beyond Defendants' motion because their action is "[t]he only way to hold the Law Firm (and its attorneys) accountable for their actions . . . ."[39]

This is not a sufficient defense. In fact, it is no defense at all.

Accordingly, Plaintiffs have not carried their burden and the Court finds Omega lacks standing to bring this claim and therefore Defendants' motion to dismiss Omega's claims is **GRANTED**.

## B. *The Court Lacks Personal Jurisdiction Over BLF and Mr. Benhayoun.*

Defendants assert the Court lacks personal jurisdiction over Mr. Lagardera, BLF, and Mr. Benhayoun.[40] Specifically, Defendants assert Mr. Lagardera, BLF, and Mr. Benhayoun have no connection to Delaware and any involvement in the settlement agreement is not sufficient to confer personal jurisdiction.[41]

Plaintiffs assert that the Court has personal jurisdiction over the defendants "pursuant to the Settlement Agreement which requires actions be brought in the State of Delaware."[42] And this constituted consent to jurisdiction.[43]

---

[38] Mot. to Dismiss at 2-5.
[39] Response ¶ 31. While Plaintiffs assert in their Complaint that Omega was a party to the Settlement Agreement, the Settlement Agreement itself does not reflect this. *See* Settlement Agreement.
[40] Mot. to Dismiss at 5.
[41] *Id.* at 5-6.
[42] Compl. ¶ 7.
[43] Response ¶ 22 ("Where the defendant has consented to jurisdiction, however, both aspects of the jurisdictional analysis are deemed satisfied." (citations omitted)).

Parties to an agreement containing a forum selection clause are said to have consented to personal jurisdiction via that clause.[44] Non-parties, too, can be brought into that forum via a forum selection clause, but for the Court to exercise personal jurisdiction over those non-parties, the Court must engage in a three-part inquiry laid out in *Hadley v. Shaffer*,[45] and adopted by this Court.[46]

That three-part inquiry asks: "First, is the forum selection clause valid? Second, are the defendants third-party beneficiaries, or closely related to the contract? Third, does the claim arise from their standing relating to the . . . agreement?"[47] All questions must be answered in the affirmative for the Court to exercise personal jurisdiction over the non-parties.[48]

While the parties do not discuss *Hadley* or make any arguments for or against its application, the Court finds the second question cannot be answered in the affirmative for Mr. Benhayoun. But it can be answered in the affirmative for Mr. Lagardera and BLF. Specifically, Mr. Benhayoun is not a third-party beneficiary of the contract, nor is he closely related to the contract. However, Mr. Lagardera, as

---

[44]  *Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt., L.L.C.*, 67 A.3d 373, 281 (Del. 2013) ("Where the parties to the forum selection clause have consented freely and knowingly to the court's exercise of jurisdiction, the clause is sufficient to confer personal jurisdiction on a court." (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964)).

[45]  2003 WL 21960406 (D. Del. Aug. 12, 2003).

[46]  *See Qlarant, Inc. v. IP Commercialization Labs*, LLC, 2022 WL 2527278, at *5-6 (Del. Super. July 6, 2022) (adopting the *Hadley* test via the Court of Chancery's decision in *Capital Group Cos., Inc. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004)).

[47]  *Id.* (quotation omitted).

[48]  *See id.*

-9-

the vice president of JL Kaya and its corporate signatory, and BLF are closely related to the contract.

First, a third-party can assert a claim to enforce a contract promise in its own name if the contract was made for its benefit.[49] But "[e]ssential to a third party's right of enforceability is the intention of the contracting parties to view that party as either a donee or creditor beneficiary."[50] Here, there is nothing in the record to suggest Mr. Lagardera, BLF, and Mr. Benhayoun were donees or creditors, nor do Plaintiffs argue that they are.

Next, as explained by the Court of Chancery, the closely related question applies the equitable estoppel doctrine and seeks to "prevent[] a non-signatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful."[51] That requires asking whether "(1) [the party] receives a direct benefit from the agreement; or (2) it was foreseeable that [the party] would be bound by the agreement."[52]

Mr. Benhayoun does not receive any direct benefit from the lawsuit, nor is it

---

[49] *Triple C. Railcar Serv., Inc. v. City of Wilm.*, 630 A.2d 629, 633 (Del. 1993) ("Equally settled is the principle that a third person, who is, in effect, a stranger to the contract, may enforce a contractual promise in his own right and name if the contract has been made for his benefit." (citing *Wilm. Hous. Auth. v. Fidelity & Deposit Co. of Md.* 47 A.2d 524 (Del. 1946)).

[50] *Id.* (quoting *Browne v. Robb*, 583 A.2d 949, 954 (Del. 1990)).

[51] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019) (quoting *Capital Gp. Cos.*, 2004 WL 2521295, at *6).

[52] *Id.* at *4 (alteration in original) (quoting *Weygandt v. Weco, LLC,* 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009)).

foreseeable he would be bound to it. However, the Settlement Agreement gives certain privileges and rights to Mr. Lagardera and BLF. For example, the Settlement Agreement states that: "In the event Omega recovers any portion of [a separate] claim, Omega and The Benhayoun Law Firm will divide the proceeds equally . . . ."[53] Additionally, the Settlement Agreement states Omega "may, at Omega's sole option, seek to enforce [a separate] judgment subject to approval of The Benhayoun Law Firm of the methods being used, however, in the event Omega does not exercise its option to seek enforcement . . . then Mr. Largardera . . . shall be permitted to seek to enforce the judgment . . . ."[54] These contractual provisions certainly show it was foreseeable to Mr. Largardera and BLF that they would be bound by the Agreement.

Accordingly, the Court lacks personal jurisdiction over Mr. Benhayoun, but can properly exercise jurisdiction over Mr. Lagardera and BLF.[55] Thus, Defendants' motion to dismiss the Complaint as alleged against Mr. Benhayoun under Rule 12(b)(2) is **GRANTED**, and as alleged against Mr. Lagardera and BLF is **DENIED**.

Given Sections A and B, the parties remaining in this action are Plaintiff Medlink and Defendants JL Kaya, Mr. Lagardera, and BLF.

---

[53] Settlement Agreement § IV.

[54] *Id.*

[55] *BAM Int'l, LLC v. MSBA Gp., Inc.*, 2021 WL 5905878, at *6 (Del. Ch. Dec. 14, 2021) (finding that when "a party properly consents to personal jurisdiction by contract, a minimum contacts analysis is not required." And that "[w]here a party is considered bound to a forum selection clause, the court treats that party as having expressly consented to personal jurisdiction." (first quoting *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008), then citing *Neurvana Med., LLC*, 2019 WL 4464268, at *3).

**C. *Count I (Fraudulent Inducement) is Well-Pled.***

In Count I Plaintiffs allege Defendants fraudulently induced Medlink into entering the Settlement Agreement by providing it false costs.[56]

Defendants make three arguments for why the fraudulent inducement claim should be dismissed. First, Defendants assert the Settlement Agreement's release bars the fraud claim.[57] Second, the fraudulent inducement claim fails to plead separate damages from the breach of contract claim.[58] Third, the fraudulent inducement claim is not pled with particularity.[59] None of these arguments are compelling.

Generally, "Delaware courts will uphold a valid general release."[60] "A plaintiff may only set aside a clear and unambiguous release 'where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries.'"[61] But, "if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud."[62]

The Settlement Agreement contains a release and covenant not to sue, which

---

[56] Compl. ¶¶ 40-52.
[57] Mot. to Dismiss at 7-8.
[58] *Id.* at 8-9.
[59] *Id.* at 9.
[60] *Alston v. Alexander*, 2012 WL 3030178, at *2 (Del. July 25, 2012) (citations omitted).
[61] *Id.* (quoting *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010)).
[62] *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012) (quoting *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del. 1999)).

-12-

Defendants say prevents Medlink from bringing the fraud claim alleged.[63] Specifically, Defendants say the fraudulent inducement claim, which alleges JL Kaya inflated the costs provided to Medlink, is covered by the release.[64] Defendants rely on *Comrie v. Enterasys Networks, Inc.*[65] for that proposition, but *Comrie* is distinguishable as the claim at issue there was not fraudulent inducement.[66]

However, *Comrie* cites to a case with similar facts to those here—*E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage*,[67] which concerned a fraudulent inducement claim and a general release.[68] In *E.I. DuPont*, the Supreme Court found that "if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud."[69] And the Supreme Court later found "that the absence of a specific reference to the actionable fraud limits the scope of the general release in [that] case."[70]

Defendants assert the specific fraudulent action was included in the release because it released:

> all such matters, arising out of, or related in any way to the Solicitation, the Prime contract, the Subcontracts, and any prior contract agreement

---

[63] Mot. to Dismiss at 7; Settlement Agreement § 2.
[64] Mot. to Dismiss at 7-8.
[65] 2004 WL 293337, at *6 (Del. Ch. Feb. 17, 2004).
[66] *Id.*
[67] *E.I. DuPont de Nemours & Co.*, 744 A.2d 457, 460 (Del. 1999).
[68] *Id.*
[69] *Id.* at 461.
[70] *Id.* at 462.

or arrangement between the parties related to Products. Medlink expressly acknowledges and agrees that, to the maximum extent permitted by law, this Settlement includes, but is not limited to, Medlink's release of, *inter alia*, any and all (i) tort, contract, and/or common law claims; and (ii) injury to goodwill.[71]

But this is the type of general release that the *E.I. DuPont* Court said should only bar a fraud claim when there is a "specific statement of exculpatory language referencing the fraud."[72] No specific statement referencing the fraud exists here and Defendants have not met their "heavy burden of proving inclusion."[73]

Second, Defendants assert Plaintiffs' fraud and breach claims fail to allege separate damages. However, this Court has found that fraud claims focused on inducement and that allege separate facts are considered separate and distinct from the breach of contract claim.[74] That is how the Complaint was pled here. While the breach of contract claim concerns certain failures by Defendants in complying with the terms of the Settlement Agreement, the fraudulent inducement claim focuses on the representations made to Medlink to induce it to enter into the Settlement

---

[71] Settlement Agreement § 2(A).

[72] *E.I. DuPont de Nemours & Co.*, 744 A.2d at 461.

[73] *Id.* ("Although this Court has not specifically addressed the question of whether fraud arising from the execution of a release is actionable, we believe that the party seeking enforcement of the release bears the burden of proving that the released fraud claim was within the contemplation of the releasing party.").

[74] *AssuredPartners of Virginia, LLC v. Sheehan*, 2020 WL 2789706, at *10 (Del. Super. May 29, 2020) ("Allegations that are focused on *inducement* to contract are separate and distinct conduct." (emphasis in original) (citation omitted)).

-14-

Agreement.[75] And Plaintiffs allege separate damages incurred by those acts.[76] Thus, the breach of contract claim and the fraudulent inducement claim allege separate and distinct facts and also separate and distinct damages.

Last, Defendants assert the fraud claim is not particular enough.[77]

The elements of fraudulent inducement are: "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance."[78]

In the Complaint, Plaintiffs jump between alleging Defendants fraudulently induced Plaintiffs and alleging JL Kaya alone fraudulently induced Plaintiffs.[79] Those alleged fraudulent statements were the cost representations included in the Settlement Agreement used to induce Medlink into entering the Settlement

---

[75] *Compare* Compl. ¶¶ 40-44, *with, id.* ¶¶ 53-58.

[76] *Id.* at 13-14 (a. Against Defendants for all damages as a result of fraud in the inducement and Defendants' false representations to Plaintiffs and Plaintiffs' reliance thereon in entering into the Settlement Agreement; b. Against Defendants for breach of their obligations under the Settlement Agreement").

[77] Mot. to Dismiss at 8-9.

[78] *E.I. DuPont de Nemours & Co.*, 744 A.2d at 461-62 (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

[79] Compl. ¶¶ 40-44. *Compare id.* ¶ 42 ("Defendants knew that their representations of the costs were false or was made with reckless indifference to the truth"), *with, id.* ¶ 43 ("Kaya intended that Medlink rely on the inflated costs in order that Medlink would accept the settlement terms. Defendants falsely inflated costs so that they could enrich themselves.").

Agreement.[80]  Fraudulent inducement requires that the defendant make the fraudulent representation.  And here the record shows only that Kaya made the fraudulent representations via the Settlement Agreement.[81]  So the fraudulent inducement claim is only well-pled as to JL Kaya.

Accordingly, Defendants' motion to dismiss Count I as alleged against BLF and Mr. Lagardera is **GRANTED**, and as alleged against JL Kaya is **DENIED**.

### D. *Count II (Breach of Contract) is well-pled.*

In Count II, Plaintiffs allege Defendants breached the Settlement Agreement by failing to provide "certain reports, documents, and payments."[82]  Those reports are the "weekly reports" which Plaintiffs assert were "based on fraudulent

---

[80]  *Id.* ¶¶ 40-44.
[81]  *Id.* ¶ 20 ("To further increase costs, Kaya inflated its actual expenditures from September 2020 to December 2020 by more than $5 million through misrepresenting shipping expenses. The invoices produced by Kaya confirm that these expenses were not paid between September 2020 and December 2020."); *id.* ¶ 21 ("Medlink relied on Kaya's representations of costs and negotiated in good faith based on those representations.").

While the Complaint contradicts those statements by also stating that "Defendants inflated the cost of production to reduce costs owed" and "Medlink relied upon Defendants' stated cost of production in its calculations" the Complaint as a whole makes clear it was JL Kaya, who made the representations at issue, not Mr. Lagardera or BLF.  Given the contradictions in the Complaint itself, the only reasonably conceivable set of facts the Court can draw from this part of the Complaint is that JL Kaya alone made the allegedly false representations to Medlink.  *See also Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) ("A claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."); *Camejo v. Angelini Pharma Inc.*, 2021 WL 141338, at *2 (Del. Super. Jan. 15, 2021) (noting that in the motion to dismiss context, the Court need not accept conclusory allegations nor accept "every strained interpretation of the allegations proposed by the plaintiff" (citation omitted)).

[82]  Compl. ¶ 55.

numbers."[83]

Defendants assert the claim lacks reasonable conceivability.[84] And they say the claim "vaguely" asserts Defendants failed to do certain unspecified contractual requirements.[85]

"The pleading standards governing the motion to dismiss stage of a proceeding in Delaware . . . are minimal."[86] While the breach of contract claim might make "vague allegations," the Court must accept them as well-pled so long as they give Defendants notice of the claim. [87] Here, Plaintiffs assert that Defendants breached the Settlement Agreement by not providing certain reports, documents, and payments, required by the Agreement. Plaintiffs do not provide which sections specifically were breached and which reports, documents, and payments were not provided. But at the pleading stage, that is enough to put Defendants on notice of Plaintiffs' claim.

So while the breach of contract claim is well-pled, it is only well-pled against JL Kaya, not Mr. Lagardera or BLF. That is because "only a party to a contract may be sued for breach of that contract."[88] And only Medlink and JL Kaya are parties to

---

[83] *Id.* ¶ 31.
[84] Mot. to Dismiss at 11.
[85] *Id.* at 11-12.
[86] *Cent. Mortg. Co*, 27 A.3d at 536.
[87] *Id.* at 535-37.
[88] *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 172 (Del. 2002) (citation omitted).

-17-

the Settlement Agreement.

Accordingly, Defendants' motion to dismiss Count II as alleged against BLF and Mr. Lagardera is **GRANTED**, and as alleged against JL Kaya is **DENIED**.

## E. *The Court Lacks Subject Matter Jurisdiction Over Count III (Specific Performance – Accounting).*

In Count III, Plaintiffs ask the Court to force Defendants to perform an accounting.[89] Plaintiffs seek this relief via specific performance.[90] Defendants argue this claim must be dismissed as it "is not a claim."[91]

Count III must be dismiss because "[t]he right to compel the specific performance of a contract is a purely equitable remedy . . . ."[92] And this Court lacks jurisdiction to hear actions that sound in equity.[93]

Accordingly, Defendants' motion to dismiss Count III is **GRANTED**.

## F. *Count IV (Aiding and Abetting Fraud) is Not Well-Pled.*

Count IV alleges Defendants aided and abetted fraud vis-à-vis the Settlement Agreement.[94] Plaintiffs assert that this claim should be dismissed because it is based on two underlying allegedly wrongful actions (Counts I and II) that are not well-

---

[89] Compl. ¶¶ 59-64.
[90] *Id.*
[91] Mot. to Dismiss at 12 (citations omitted).
[92] *Anguilla Re, LLC v. Lubert–Adler Real Estate Fund IV, L.P.*, 2012 WL 1408857, at *5 (Del. Super. Mar. 28, 2012) (citing *Chavin v. H.H. Rosin & Co.*, 246 A.2d 921, 922 (Del. 1968)).
[93] *See id.*
[94] Compl. ¶¶ 65-71.

pled, and thus fails as a matter of law.[95]

A claim for aiding and abetting fraud requires the plaintiff show the defendant's "(i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance."[96] But this claim is limited by the intra-corporate agency doctrine which states that "officers and agents cannot aid and abet their principal or each other in the commission of a tort."[97] Here, BLF, JL Kaya's law firm, and Mr. Lagardera, JL Kaya's vice president, are agents of JL Kaya. And thus the intra-corporate agency doctrine applies to bar this claim.

Accordingly, Defendants' motion to dismiss Count IV is **GRANTED**.

## V. CONCLUSION

To summarize, Omega lacks standing to prosecute its claim. The Court lacks personal jurisdiction over Mr. Benhayoun. Counts I and II are well-pled only against JL Kaya. The Court lacks subject matter jurisdiction over Count III. And Count IV is not well-pled.

Accordingly, Defendants' Motion to Dismiss Omega for lack of standing[98] is

---

[95] Mot. to Dismiss at 13-14.

[96] *Aspring Holdco, LLC v. NGP X US Hldgs., L.P.*, 2020 WL 4355555, at *20 (Del. Ch. July 30, 2020) (citation omitted).

[97] *Cornell Glasgow*, 2012 WL 2106945, at *11 (citations omitted); *see AmeriMark Interactive, LLC v. AmeriMark Hlgs., LLC*, 2022 WL 16642020, at *11-12 (Del. Super. Nov. 3, 2022).

[98] The Court need not reach the issue of whether lack of standing in this instance should be evaluated under Rule 12(b)(1) or Rule 12(b)(6) because Plaintiffs have failed to make any argument against Defendants' lack of standing allegations. *See Appriva S'holder Litig. Co., LLC*, 937 A.2d at 1283-84.

**GRANTED**; Defendants' Motion to Dismiss Mr. Lagardera, Mr. Benhayoun, and BLF under Rule 12(b)(2) is **GRANTED** as to Mr. Benhayoun, and **DENIED** as to BLF and Mr. Lagardera; Defendants' Motion to Dismiss Count I under Rule 12(b)(6) as alleged against JL Kaya, BLF, and Mr. Lagardera is **GRANTED** as to BLF and Mr. Lagardera, and is **DENIED** as to JL Kaya; Defendants' motion to dismiss Count II under Rule 12(b)(6) as alleged against JL Kaya, BLF, and Mr. Lagardera is **GRANTED** as to BLF and Mr. Lagardera, and is **DENIED** as to JL Kaya; Defendants' Motion to Dismiss Count III under Rule 12(b)(1) is **GRANTED**; and Defendants' Motion to Dismiss Count IV under Rule 12(b)(6) is **GRANTED**;

**IT IS SO ORDERED.**

*Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

*via File N'Serve Xpress*

-20-