# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JONATHAN GOVETTE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 2019-0139-NAC |
| DAVID BONGIOVANI, RICK HAMMER AND JOSEPH MACALUSO, | ) ) ) ) | |
| Defendants, and | ) ) | |
| ELECTRONIC REFERRAL MANAGER, INC., | ) ) ) | |
| Nominal Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Date Submitted: January 17, 2025
Date Decided: October 15, 2025

David H. Holloway, SHLANSKY LAW GROUP, LLP, Wilmington, DE, David J. Shlansky, SHLANSKY LAW GROUP, LLP, Chelsea, MA, Jonathan Harting, HOLLOWAY LAW LLC, Wilmington, DE; Attorneys for Plaintiff Jonathan Govette

Paul D. Brown, CHIPMAN BROWN CICERO AND COLE LLP, Wilmington, DE, Henry M. Burgoyne III, BURGOYNE LAW GROUP, San Francisco, CA; Attorneys for Defendants David Bongiovanni, Rick Hammer, and Joseph Macaluso.

**COOK, V.C.**

This memorandum opinion resolves Defendants' renewed Motion to Dismiss Plaintiff's Verified Third Amended Complaint ("TAC") (the "Renewed Motion"). The Renewed Motion follows the Court's June 7, 2021, decision on Defendants' original Motion to Dismiss (the "Initial Motion"). In that decision, Vice Chancellor Glasscock held:

> If the Defendants are correct that [Govette] knowingly submitted falsified corporate records to this Court, that conduct would violate the oath requirement of Rule 3(aa). . . . It is not, to my mind, obvious that [Govette] has attempted to manipulate this Court to secure a tactical advantage or otherwise 'undercut[] the integrity of the judicial process.' . . . I decline to dismiss on these grounds. I do so, however, without prejudice to the Defendants' right to renew the motion in the event . . . an appropriate evidentiary proceeding reveals that [Govette] falsified documents or otherwise engaged in severe misconduct to achieve an advantage in this litigation.[1]

Defendants' Renewed Motion reasserts, with the benefit of discovery, that Plaintiff Jonathan Govette ("Govette") (1) included knowingly false allegations in his verified pleadings; (2) provided false deposition testimony regarding those pleadings; and (3) produced and filed fabricated documents in support of his claims, including with his verified complaint. Consistent with Vice Chancellor Glasscock's 2021 decision, I held an evidentiary hearing to ascertain Plaintiff's response to those allegations and to determine the appropriate sanction. During that hearing, Plaintiff presented additional false testimony, and his counsel acknowledged Govette falsified documents submitted in support of his claims.

---

[1] *Govette v. Elec. Referral Manager, Inc.*, 2021 WL 2311956, at *6 (Del. Ch. June 7, 2021) (quoting *Bessenyei v. Vermillion, Inc.*, 2012 WL 5830214 at *8 (Del. Ch. Nov. 16, 2012), *aff'd*, 67 A.3d 1022 (Del. 2013)).

1

I have carefully considered the extensive record of Plaintiff's misrepresentations in verified pleadings and falsification of documents submitted to the Court. Based on that review, I conclude Defendants proved by clear and convincing evidence that Govette violated Rule 3(c) by submitting knowingly false allegations in his Verified First Amended Complaint ("FAC"), attaching false documents thereto, and making misrepresentations to the Court. Given the seriousness and persistent nature of Govette's conduct, I conclude that I am compelled to dismiss Plaintiff's complaint under Rule 41(b). I therefore grant Defendants' Renewed Motion. Plaintiff's TAC is dismissed with prejudice.

## I.    BACKGROUND

The allegations concerning certain background facts have remained largely consistent despite Plaintiff's ever-changing story. As alleged, Govette founded nominal Defendant Electronic Referral Manager, Inc. ("ERM") in August 2011.[2] ERM "researches, develops, and commercializes medical referral management software."[3] As ERM's founder and sole director, Govette alleges he provided the initial seed money, funded development of the company's flagship software, and paid company expenses with personal funds.[4] In August 2018, Govette resigned as CEO pursuant to an agreement with Defendants David Bongiovanni ("Bongiovanni") and Rick

---

[2] Dkt. 103, Pl.'s Verified Third Am. Compl. ¶ 13.

[3] *Id.* ¶ 3.

[4] *Id.* ¶¶ 14-15. As such, Govette alleges that, "[a]s with virtually every entrepreneur-funded company without early seed or venture funding, Govette presumptively owed all of the equity himself." *Id.* ¶ 16.

2

Hammer ("Hammer").[5] That agreement contemplated "Hammer and Bongiovanni []

earn[ing] their way into equity and devot[ing] full-time effort to growing ERM[.]"[6]

The operative TAC, however, alleges Bongiovanni and Hammer used improper

means to "divest Govette of his equity."[7] According to the TAC, these efforts

culminated in Govette's complete ouster from ERM, based in part on a dispute

concerning whether he could prove ownership of ERM stock.[8] This prompted Govette

to commence this action. Govette's ability to prove he acquired and owned ERM stock

is thus a core area of dispute between the parties. And it is regarding that issue that

Govette repeatedly altered his story, submitted false documents, and lied under oath.

In his initial Verified Complaint, Govette alleged that he entered into a

Common Stock Purchase Agreement ("SPA") with ERM on July 23, 2012.[9] Under the

SPA, ERM allegedly agreed to issue Govette 5,000,000 shares of common stock in

exchange for $20,000.[10] Per the Verified Complaint, on August 13, 2012, Govette

deposited $25,000 into ERM's bank account, with $20,000 earmarked to satisfy his

---

[5] *Id.* ¶¶ 19, 24-26.

[6] *Id.* ¶¶ 19.

[7] *Id.* (describing Bongiovanni and Hammer's tactics as a "Trojan Horse"); *see id.* ¶¶ 24-47 (allegations concerning Bongiovanni and Hammer's efforts "to fleece Govette" out of his equity).

[8] *See id.* ¶¶ 24-50, 61 ("Govette does not have current control of ERM due to the mathematical reality of his majority stockholding being made to disappear."), 72 ("[a] genuine dispute exists between Govette and the Liability Defendants concerning whether Govette is the rightful holder of 5,000,000 shares of ERM's Common stock.").

[9] Dkt. 1, Verified Compl. ¶ 12 (filed February 21, 2019).

[10] *Id.*

3

SPA payment obligations.[11] Simultaneously, Govette alleged that he paid for his ERM stock through a July 23, 2012 "ACKNOWLEDGEMENT OF CANCELATION OF INDEBTEDNESS[,]" ("Acknowledgement").[12] The Acknowledgement purportedly cancelled $20,000 of debt ERM owed Govette as payment for the same 5,000,000 shares of ERM common stock.[13]

In their Answer to the Verified Complaint, Defendants asserted that no contemporaneous documents supported Govette's allegation that he deposited $25,000 into ERM's bank account to satisfy his SPA payment obligations.[14] Defendants also asserted the Acknowledgement's promised debt forgiveness was not valid consideration for Govette's purported ERM stock purchase.[15] This prompted Govette to file his FAC.[16]

In the FAC, Govette altered his story on how he acquired ERM stock for the first time. Rather than rely on the SPA, the FAC alleged that Govette held a board meeting on July 18, 2012 (the "July 18 Meeting"), where he, as sole-director, authorized ERM to sell him 5,000,000 shares of common stock for $20,000.[17] The FAC alleged Govette planned to pay the $20,000 via a $25,000 check from his uncle.[18]

---

[11] *Id.* ¶ 13.

[12] *Id.* ¶¶ 14, 16.

[13] *Id.*

[14] Dkt. 12, Defs.' Answer at 11 (filed March 20, 2019).

[15] *Id.* at 26.

[16] *See* Dkt. 24, First Verified Am. Compl. (filled July 23, 2019).

[17] *Id.* ¶ 13.

[18] *Id.*

4

The FAC also alleged Govette signed two slightly different versions of minutes from the July 18 Meeting, and attached "[t]rue and correct copies" as Exhibit D.[19] Additionally, Govette allegedly executed an Action by Written Consent of the Sole Director of ERM ("Written Consent") on July 22, 2012, that "allowed for Govette to pay for his 5 million shares through other means."[20]

After Plaintiff filed the FAC, the parties began discovery. Govette produced documents that he represented to be original versions of the purported July 18 board meeting minutes, as well as copies of the minutes of other ERM board meetings from 2012 and 2014.[21] Defendants provided those documents to a digital forensic expert for examination.[22] That expert concluded the documents were created using software unavailable before 2014.[23]

On August 26, 2019, Defendants deposed Govette and probed into the circumstances surrounding the purported July 18 Meeting minutes.[24] Govette testified he was unable to recall when he prepared the purported minutes, whether he changed them, or why he executed two different versions.[25] Govette further testified that he could not recall why the two versions had different wording, whether

---

[19] *Id.*

[20] *Id.* at 14.

[21] *See, e.g.*, Dkt. 34, Ex. A at 68, 148-49, 163-69.

[22] Dkt. 34, Ex. B.

[23] *Id.* at ¶¶ 72-75, 91-94

[24] Dkt. 34, Ex. A

[25] *Id.* 156:9-159:8, 174:9-178:8, 184:8-185:7.

he prepared them from a single source document, or which version he executed first.[26] Govette also could not explain why one version had a date of execution while the other did not.[27] Govette attributed his memory issues to the passage of time."[28]

Three weeks later, Govette filed his Second Amended Complaint ("SAC") without verification, though he later submitted a verification after the Court granted Defendants' Motion to Strike.[29] In the SAC Govette again changed his story concerning how he allegedly acquired ERM stock. Specifically, Govette removed all allegations regarding: (1) the July 18 Meeting and minutes; and (2) the $25,000 check from his uncle.[30]

On October 23, 2019, Defendants filed the Initial Motion seeking dismissal under Rules 3(aa) and 41(b). Among other arguments, Defendants asserted Govette included false allegations in the FAC regarding the July 18 Meeting, and fabricated minutes for that purported meeting.[31] As discussed, Vice Chancellor Glasscock denied the Initial Motion, while expressly contemplating the possibility of a renewed motion to dismiss depending on how the evidence developed.[32]

---

[26] *Id.* 148:16-19, 155:25-156:7, 156:16-157:1.

[27] *Id.* 143:2-10.

[28] *Id.* 185:5-7 (Govette testifying "[t]his was seven years ago.").

[29] Dkt. 30, Second Am. Compl; *see, e.g.*, Dkt. 63. Notably, Govette's counsel moved to withdraw the day after the SAC was filed, which the Court later granted. Dkt. 32; Dkt. 39.

[30] Dkt. 30, Redline Showing Changes from the First Am. Compl. at 4-5.

[31] Dkt. 34, Op. Br. in Supp. of Defs.' Mot. to Dismiss at 6-9.

[32] *See Govette*, 2021 WL 2311956, at *6. The Vice Chancellor's holding nullifies Plaintiff's argument that Defendants' motion presents arguments that "have already been asked and answered." Dkt. 156, Pl.'s Answering Br. in Opp'n to Renewed Mot. to Dismiss at 22-23.

In accordance with that ruling, Defendants pursued discovery concerning Govette's litigation misconduct. On December 21, 2021, Govette agreed to submit a declaration recounting the facts concerning his creation of ERM board minutes "relating to stock issuance authorization in 2012, or any other after-created documents."[33] Govette also agreed to provide all such documents in native format and explain the documents' history.[34]

On January 7, 2022, Govette's counsel served the contemplated declaration ("January 2022 Declaration").[35] Govette admitted that he "created backdated [board] minutes for 2012 through 2014, three documents, and claimed that they were contemporaneous."[36] The January 2022 Declaration attached the three fabricated documents, including one version of the July 18 Meeting minutes.[37] Govette reiterated that he "created" the attached "2012, 2013, and 2014" board minutes "in

---

Plaintiff contends "Defendants' prior request to dismiss on that same basis that Govette had allegedly forged documents and engaged in perjury was previously denied." *Id.* Plaintiff's argument, however, ignores that Vice Chancellor Glasscock specifically denied Defendants previous motion to dismiss "without prejudice" and contemplated a renewed motion based on future factual development. *Govette*, 2021 WL 2311956, at *6. Thus, Defendants' previous motion to dismiss on similar grounds does not compel rejecting the motion currently before the Court. *See Beck v. Beck*, 766 A.2d 482, 484 (Del. 2001) ("a dismissal without prejudice does not bar a later [motion] based on the same [position]").

[33] Dkt. 123, Aff. of Burgoyne in Supp. of Defs.' Renewed Mot. to Dismiss Pl.'s Compl. ("Burgoyne Aff.") ¶ 3; *id.* Ex., A. Govette had to submit that declaration by January 7, 2022. *Id.*, Ex. A.

[34] *Id.*

[35] Dkt. 98, Ex. 1 ("Jan. 2022 Decl.").

[36] *Id.* ¶ 9.

[37] *Id.* (exhibits to Jan. 2022 Decl.).

2018" and "falsely backdated" those documents and his signatures.[38] Seeking to explain his conduct, Govette represented that he "panicked" because he "had no formal corporate records to show the things [he] had done when [he] was the only stockholder[.]"[39] Govette noted that in 2012-2014 he "was primarily concerned with the success and operations of the business and was not skilled in matters of corporate formality or bookkeeping."[40] Falsification notwithstanding, Govette maintained that "[t]he actual things reflected on those minutes"—including the $25,000 check from his uncle to purchase shares—"each happened at the time in question in 2012-2014 . . . [b]ut they were not memorialized by annual minutes at the time."[41]

On January 31, 2022, Govette filed the operative TAC.[42] Once again, in the TAC Govette shifted his story on how he acquired ERM stock. The TAC omits allegations concerning the Acknowledgement and Written Consent, instead relying on Govette's allegation that ERM agreed to issue him stock in exchange for $20,000 under the SPA.

Meanwhile, Defendants' counsel expressed concerns about the adequacy of Govette's disclosures in the January 2022 Declaration.[43] Govette had not produced native-format versions of the manufactured minutes attached to the January 2022

---

[38] *Id.* ¶ 9.

[39] *Id.*

[40] *Id.* ¶ 4.

[41] *Id.* ¶ 10, *see also id.* (exhibits to Jan. 2022 Decl.).

[42] Dkt. 103, Pl.'s Verified Third Am. Compl.

[43] Dkt. 123, Aff. of Burgoyne in Supp. of Defs.' Renewed Mot. to Dismiss Pl.'s Compl. ("Burgoyne Aff.") Ex. G at 3.

8

Declaration or included an audit trail or other chronology for those documents.[44]

After repeated prodding, Govette submitted another declaration on February 18, 2022 ("February 2022 Declaration").[45] In the February 2022 Declaration, Govette swore that he:

> created backdated minutes for 2012 through 2014, three documents, and claimed that they were contemporaneous. The July 18, 2012 Minutes; February 1, 2013 Minutes; and July 9, 2014 Minutes were created in 2018, and I falsely backdated them. My signature on the July 18, 2012 Minutes at Exhibit A and the August 15, 2012 Minutes at Exhibit B were [sic] also created in 2018.[46]

Govette attached those fabricated documents as exhibits, including the version of the July 18 Meeting minutes referenced in and attached to the FAC and the January 2022 Declaration.[47] The February 2022 Declaration's exhibits also included a version of the July 18 Meeting minutes that Govette did *not* include in the January 2022

---

[44] *See, e.g.,* Burgoyne Aff. Ex. C at 2-3 (email on Feb 3, 2022, requesting native-format documents). Defendants' counsel corresponded extensively with Govette's counsel in the following weeks, repeatedly requesting the promised native-format documents. *See* Ex. D at 1 (Feb. 6, 2022 email); Ex. F at 1 (Feb. 9, 2022 email); Ex. G at 3 (Feb 17, 2022 email); Ex. H at 1 (Feb. 18, 2022 email).

[45] Burgoyne Aff. Ex. G.

[46] *Id.*

[47] *Id.*

Declaration but referenced in the FAC.[48]  Further, the February 2022 Declaration included purported August 15, 2012 board minutes, not previously discussed.[49]

On September 13, 2022, Defendants filed the Renewed Motion.[50]  The Renewed Motion argues Govette (1) included false allegations in the FAC verified as true and correct to the best of his knowledge; (2) created, backdated, and attached to the FAC falsified minutes from the purported July 18 Meeting; and (3) provided false

---

[48] *Compare* Burgoyne Aff. Ex. G. (the first of the two attached versions of the July 2012 board minutes) *with* Ex. B. That version mirrors the other of the two sets of July 18, 2012, board minutes that Govette referenced in and attached to his FAC, save for one additional sentence. *Compare* Burgoyne Aff. Ex. G (the first of the two attached versions of the July 2012 board minutes) *with* Dkt. 24, Ex. D (also the first of the two attached versions). The version attached to the February 2022 Declaration has an additional sentence in the final bullet point under "CEO Report": "The remaining $5,000 is intended to be used to capitalize the company and be repaid in the future once funding has been received."

[49] Burgoyne Aff. Ex. G.  The February 2022 Declaration, however, did not satisfy Defendants, who continued to request native-format versions of the various purported board meeting minutes. *See, e.g.*, *id.* Exs. C at 2-3; D at 1; F at 1; G at 3; H at 1.  In February 2022, Govette produced "the native versions . . . that exist" of his fabricated documents, seven files in total. *Id.* Ex. I (the native versions were unsigned word documents).  The native format documents Govette produced included purported minutes from a October 20, 2012, board meeting that was not referenced in any prior declaration. Burgoyne Aff. Ex. I; *See id.* Ex. B (Jan. 2022 Decl.), Ex. G (Feb 2022 Decl.).

[50] Dkt. 123, Defs.' Renewed Mot. to Dismiss Pl.'s Verified Compl. Govette argues Defendants' renewed motion is untimely, because it was filed 215 days after he submitted the TAC. *See* Dkt. 156, Pl.'s Answering Br. in Opp'n to Renewed Mot. to Dismiss at 19-20 (citing Ct. Ch. R. 15(a)).  That argument fails for two reasons. First, Defendants filed a timely "placeholder" Motion to Dismiss ten days after Govette submitted his TAC. Dkt. 105, Director Defs' Mot. To Dismiss Pl.'s Third Am. Compl.; *see* Ct. Ch. R. 6 ("in computing any time period specified in these Rules . . . [w]hen the period is stated in days . . . [e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days."); Ct. Ch. R. 15(a)(6) ("any response to an amended pleading must be made within the time remaining to response to the original pleading or within 10 days after service of the amended pleading, whichever is later."). Second and more fundamentally, Defendants' renewed motion to dismiss invoked Rule 41(b), which permits filing a motion to dismiss "[f]or failure of the plaintiff . . . to comply with these Rules" without any time-limitation. Ch. Ct. R. 41(b).  On top of this, Vice Chancellor Glasscock's June 2021 decision envisioned the filing of a renewed motion if the development of the evidentiary record bore out Defendants' arguments.  Accordingly, Defendants' renewed motion to dismiss is timely.

10

deposition testimony regarding the July 18 Meeting and minutes.[51] Defendants also argue Govette attempted to hide the full extent of his document falsification, including through his two declarations.[52]

On November 20, 2023,[53] Govette filed his opposition.[54] Govette asserts the actions described above do not warrant dismissal.[55] Govette contends his "supposed forgery and perjury concern documents that are not relied on in Govette's current claims[.]"[56] Govette also maintains he forthrightly admitted his falsifications and that the underlying facts in the falsified documents actually occurred.[57]

Defendants filed their reply on December 15, and the Court held oral argument on January 22, 2024.[58] During oral argument, Govette's counsel conceded that Govette "created certain board meeting minutes or agendas" that "he had falsely written," "backdated," and "submitted."[59] When asked if Govette violated Rule 3's oath requirement, Govette's counsel responded that Govette "knowingly submitted

---

[51] Dkt 123, Defs.' Op. Br. In Supp. Of Renewed Mot. to Dismiss at 3-5, 7-12, 31.

[52] *Id*. at 14-15, 24.

[53] This matter was reassigned to me between Defendants' filing of their renewed motion to dismiss and Govette's opposition. Dkt. 135.

[54] Dkt. 156, Pl.'s Answering Br. in Opp'n to Renewed Mot. to Dismiss.

[55] *Id*. at 6, 24.

[56] *Id*. at 24.

[57] *Id*. at 6-8.

[58] *See, e.g.*, Dkt. 161, Defs.' Reply Br. in Further Supp. of Renewed Mot. to Dismiss; Dkt. 168, Tr. of 1-22-2024 Oral Arg.

[59] Dkt. 168, Tr. of 1-22-2024 Oral Arg. 48:5-6, 60:24-61:1, 59:21-23.

those false documents to the Court, yes."[60]  Following oral argument, the Court ordered an evidentiary hearing to determine the question of appropriate sanctions.[61]

On November 22, the Court held the evidentiary hearing, which featured live testimony from Govette.[62]  At the hearing, Govette again admitted to fabricating minutes for ERM board meetings between 2012 and 2014, including the July 18 Meeting minutes attached to the FAC.[63]  Govette testified he fabricated documents to "make a better case" for himself in this action.[64]  He also admitted to providing false deposition testimony regarding those falsified minutes.[65]  Govette continued to represent, however, that the false documents "memorialize[d] things that actually did happen."[66]  For example, Govette testified that the fabricated July 18 Meeting minutes accurately reflected that Govette paid for 5,000,000 shares of ERM stock using funds from a $25,000 check from his uncle.[67]

Govette changed his story mid-hearing, however, in response to the Court's questions about the Written Consent and SPA.[68]  Specifically, Govette pivoted and testified he actually obtained 5,000,000 shares of ERM stock through the Written

---

[60] *Id.* 59:21-22.

[61] *Id.* 88:8-11; 89:18-19.

[62] Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g.

[63] *Id.* 13:1-3, 18:13-19:1, 31:20-32:3, 39:3-8.

[64] *Id.* 17:21-24.

[65] *Id.* 8:12-20, 10:5-9, 11:4-8, 37:20-38:2.

[66] *Id.* 6:23-8:20, 31:4-32:18.

[67] *Id.* 44:16-19, 53:16-21, 56:2-20, 64:9-23.

[68] *Id.* 93:13-14, 101:19-22.

Consent and SPA.[69] When confronted with his conflicting stories, Govette explained he "always knew" the SPA effectuated his ERM share purchase, but could not find the relevant bank records to prove that transaction when Defendants challenged his ownership.[70] Govette testified he feared the lack of documents corroborating the SPA transaction would imperil his ability to prove share ownership.[71] Thus, Govette relied on the purported $25,000 check from his uncle to prove he paid for his shares in a "different manner."[72] When Govette later found bank records verifying the SPA transaction, he submitted them and attributed the conflicting theories to his effort to over-determine his stock purchase.[73] Presented with these inconsistent stories, the Court asked Govette on whether his testimony concerning payment via the purported $25,000 check from his uncle was truthful.[74] Although Govette initially maintained that his testimony concerning the check from his uncle was truthful,[75] he eventually

---

[69] *Id.* 108:7-11 ("I want to focus on the [$]20,000 I put in accumulative over the period of years I worked."), 171:20-24 ("I want to focus on the [$]20,000 that I paid via the bank statements that I submitted to the Court."). This reflected a shift away from the TAC's allegations, which do not discuss the Written Consent. *Id.* 106:19-107:1, 106:14-17 ("[T]he written consent piece is – it's not in . . . the allegations.").

[70] *Id.* 105:2-6, 13-16.

[71] *Id.* 105:6-19.

[72] *Id.*

[73] *Id.* 105:20-23, 114:24-115:2.

[74] *See id.* 108:2-6, 169:24-170:3, 170:22-171:8,

[75] *See id.* 108:7-9 ("It is truthful, but I want to focus on the [$]20,000 I put in accumulative over the period of years I worked."), 171:9-11 (Govette explaining he "pa[id] for [his] shares, twice basically, in essence[.]"), 171:19-172:23 ("He [Govette's uncle] did give me a check. That's accurate. But that's not what I want to focus on. I want to focus on the bank statements that I did submit[.]").

admitted it was untrue.[76]   Along the same lines, Govette conceded the FAC's allegations that Govette purchased his shares in connection with the July 18 Meeting using funds from the $25,000 check were false.[77]

## II.   RELEVANT LAW

Defendants seek dismissal with prejudice under Rules 3(c) and 41(b).  Rule 3(c) provides in relevant part as follows:

> The following papers must be verified:  (A) complaints; . . . and . . . amendments or supplements to those pleadings. . . . Each party filing the paper must verify under oath or by affirmation that the matter contained in the paper is true and correct to the best of the party's knowledge, information, and belief.[78]

The verification requirement exists "to assure [the] truthfulness [] [] of complaints, answers, and comparable pleadings."[79]   A litigant violates Rule 3(c) when they include "false allegations [] [] verified as true" in a pleading.[80]   Such a violation "is not some mere technicality; it undercuts the integrity of the judicial process."[81]

Rule 41(b) provides, "for failure of the plaintiff . . . to comply with these Rules . . . a defendant may move for dismissal of an action."[82]   The power to dismiss a plaintiff's claims for failure to comply with the Court's rules is rooted in the "inherent

---

[76] *Id.* 172:24-173:4 ("No.  I funded [the purchase] through the Citibank account[.]").

[77] *Id.* 174:10-175:15.

[78] Ct. Ch. R. 3(c).

[79] *Bessenyei*, 2012 WL 5830214, at *8.

[80] *Charter Communications Operating, LLC v. Optymyze*, 2021 WL 1811627, at *25-27 (Del. Ch. Jan. 4, 2021).

[81] *Bessenyei*, 2012 WL 5830214, at *8.

[82] Ct. Ch. R. 41(b) ("Unless the Court in its order for dismissal otherwise specifies, a dismissal under this paragraph . . . operates as an adjudication upon the merits.").

14

authority to police the litigation process, to ensure that acts that undermine the integrity of that process are sanctioned."[83] Thus, the Court "is necessarily accorded considerable latitude in dealing with serious abuses of the judicial process."[84] These abuses include a party's lack of candor and making materially misleading statements to obtain a tactical advantage throughout judicial proceedings. [85] Courts have "'clear' authority to dismiss a plaintiff's action" when such abuses exist.[86]

## III. ANALYSIS

The Renewed Motion seeks dismissal of Plaintiff's claims pursuant to Rule 41(b) based on Govette's asserted violations of Rule 3(c). Accordingly, the Court first

---

[83] *Bessenyei*, 2012 WL 5830214, at *2 (quoting *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 932 (Del. Ch. 2008)).

[84] *Smith v. Williams*, 2007 WL 2193748, at *3 (Del. Ch. July 27, 2007); *see also Parfi*, 954 A.2d at 933 n.78.

[85] *See Parfi*, 954 A.2d at 933 ("Under both the decisional law of this state, that of other states, and that of the federal courts, the importance of candor to the tribunal is well-recognized."); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("[Lack of candor] is a wrong against the institution set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society."); *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del. 1999) ("Candor and fair-dealing are . . . the hallmark of litigation and required attributes of those who resort to the judicial process.").

[86] *Parfi*, 954 A.2d at 933 (quoting *Gebhart v. Ernest DiSabatino & Sons, Inc.*, 264 A.2d 157, 159 (Del. 1970)); *see Bessenyei*, 2012 WL 5830214, at *2 ("[D]ismissal is proper when the tradition of civility and candor that has characterized litigation in this court is threatened because the integrity of the litigation process is fundamentally undermined if parties are not candid with the court." (internal quotes omitted)). Dismissing plaintiff's complaint for lack of candor and making materially misleading statements "is consistent with the U.S. Supreme Court's interpretation of the inherent authority of federal courts to sanction bad-faith conduct, especially when the court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Parfi*, 954 A.2d at 933 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

15

evaluates whether Govette violated Rule 3(c). If so, the Court then considers whether dismissal with prejudice is an appropriate sanction under Rule 41(b).

## A. Govette Violated Rule 3(c).

The Court holds Govette violated Rule 3(c) by submitting the FAC, which contained knowingly false allegations that he verified as true. Specifically, the FAC falsely alleged that at the July 18 Meeting ERM agreed to sell Govette 5,000,000 shares of common stock for $20,000, which he would pay for with a $25,000 check from his uncle.[87] Additionally, Govette attached fabricated minutes from the July 18 Meeting to the FAC while representing they were "[t]rue and correct copies."[88] Govette made these false allegations and proffered the falsified minutes despite verifying the FAC was "true and accurate" to the best of his knowledge.[89]

There is no serious dispute that the FAC violated Rule 3(c). Indeed, Govette repeatedly admitted he created "the "July 18 [Meeting] Minutes" in 2018 and "falsely backdated" them to claim they were "contemporaneous."[90] Govette also confessed the FAC's allegations concerning the $25,000 check from his uncle were false.[91] Moreover, his own counsel conceded Govette violated Rule 3(c)'s oath requirement by "knowingly submitt[ing] [] false documents to the Court."[92] Rather than arising from

---

[87] Dkt. 24, First Verified Am. Compl. ¶ 13.

[88] *Id.*

[89] Dkt. 24, Jonathan Govette's Verification.

[90] Jan. 2022 Decl. ¶ 9; *see* Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g. 17:21-24.

[91] Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g. 174:10-175:15.

[92] Dkt. 168, Tr. of 1-22-2024 Oral Arg. 59:21-22.

16

some mistake or misunderstanding, Govette admitted he included false allegations and fabricated ERM board meeting minutes to "make a better case" for himself in this litigation.[93] Not only do these admissions show Govette violated Rule 3(c), they undermine the credibility of his other assertions during this case.[94]

Govette's untruthfulness, however, was not limited to the FAC and documents attached thereto. While Govette admitted he falsified the board meeting minutes attached to the January 2022 Declaration,[95] he continued to represent those fabricated documents memorialized events that actually happened.[96] That included the false assertion that Govette paid for his ERM shares via a $25,000 check from his uncle.[97] Similarly, the February 2022 Declaration included purported board meeting minutes Govette omitted from the January 2022 Declaration.[98] Further, Govette admits he provided false deposition testimony regarding the check from his uncle as

---

[93] Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g. 17:21-24.

[94] *Du Pont v. Du Pont*, 103 A.2d 234, 277 (Del. 1954) ("A determination that a party has been untruthful, of course, affects the credibility of his whole testimony, and lying on one issue inevitably impairs one's chances of prevailing on any other disputed point."). Govette's questionable credibility is further eroded by the fact that Govette repeatedly altered his story throughout his pleadings concerning the key issue of how he acquired ERM stock, often advancing inconsistent assertions. *See State v. Elder*, 2023 WL 6051126, at *11 (Del. Super. Sept. 13, 2023) ("When . . . a witness [] makes inconsistent statements, it becomes fodder for impeachment . . . and an issue . . . to consider when evaluating the witness's credibility."); *Llamas v. Titus*, 2019 WL 2505374, at *2 (Del. Ch. June 18, 2019) (concluding a witness "who repeatedly changed his story and offered dubious interpretations of contemporaneous documents" was "particularly unreliable.").

[95] January Dec. ¶ 9.

[96] *Id.* ¶ 10.

[97] *See id.*, Exs.; Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g. 174:10-175:15.

[98] *See* Burgoyne Aff. Exs. B; I.

17

well as the July 18 Meeting and minutes.[99]  Govette's untruthfulness continued during the evidentiary hearing convened to address his prior falsehoods.[100]

Accordingly, the Court finds by clear and convincing evidence that Govette violated Rule 3(c) by (1) including false verified allegations in the FAC concerning the July 18 Meeting and the $25,000 check from his uncle; and (2) attaching fabricated minutes for the July 18 Meeting to the FAC.[101]

## B. Dismissal Is the Appropriate Sanction for Govette's Misconduct.

Having found Govette violated Rule 3(c), the question is whether dismissal of his claims with prejudice is an appropriate sanction under Rule 41(b).  The opinion resolving the Initial Motion foreshadows that the answer is yes.  Vice Chancellor Glasscock held dismissal was not appropriate because on the then-current record[102] it was not "obvious that [Govette] [] attempted to manipulate this Court to secure a tactical advantage or otherwise undercut the integrity of the judicial process."[103]  Yet, Vice Chancellor Glasscock expressly contemplated a renewed motion could result in

---

[99] *See* Tr. of Evid. Hr'g 8:12-34:19; Dkt. 34, Ex. A 143:2-10, 148:16-19, 155:25-159:8, 174:9-178:8, 184:8-185:7.

[100] *See, e.g.*, Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g. 174:10-175:15.

[101] *See Govette*, 2021 WL 2311956, at *6 ("If the Defendants are correct that the [Govette] knowingly submitted falsified corporate records to this Court, that conduct would violate the oath requirement of Rule 3(aa).").

[102] At that point in the litigation "[i]t [was] unclear what [Govette] alleges that he actually paid for his shares [because] [h]e [] asserted at various times that he paid cash, deposited a check, deferred compensation, and/or cancelled a debt owed to him by ERM in exchange[,]" while "[i]n previous pleadings, [Govette] alleged other potential methods of payment, including a $25,000 check from his uncle[.]" *Id.* at *2 & n.16.

[103] *Id.* at *6.  Hence, the Vice Chancellor was not convinced "that the Defendants ha[d] suffered the kind of harm that warrants dismissal." *Id.*

18

dismissal if discovery "reveal[ed] that [Govette] falsified documents or otherwise engaged in severe misconduct to achieve an advantage in this litigation."[104] As discussed, the Court now knows Govette knowingly made false allegations and submitted fabricated documents in connection with the FAC specifically to "make a better case" for himself in this litigation.[105] Therefore, law of the case suggests dismissal is an appropriate sanction.[106]

Even if the Court were writing on a blank slate, dismissal would still be appropriate. Delaware law provides that "when [a] plaintiff come[s] to this Court seeking equity,[107] they are expected to do equity by the other parties to the case and to the Court itself, by being candid."[108] Based on that principle, this Court has held

---

[104] *Id.* It is for that exact reason that Vice Chancellor Glasscock denied the Initial Motion without prejudice. *Id.*

[105] Dkt. 173, Tr. of 11-22-2024 Evid. Hr'g. 17:21-24.

[106] *See Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990) ("The 'law of the case' is established when a specific legal principle is applies to an issue presented by the facts which remain constant throughout the subsequent course of the same litigation."); *Gannett Co., Inc. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) ("The law of the case doctrine requires that there must be some closure to matters already decided in a given case . . . particularly when . . . that same court is considering matters in a later phase of the same litigation."). *But see Brittingham v. State*, 705 A.2d 577, 579 (Del. 1998) (noting the law of the case doctrine is flexible and "will not be enforced where doing so would produce an injustice." (internal quotes omitted)).

[107] Govette's breach of fiduciary duty claim is an equitable claim even though Govette seeks only money damages as a remedy. *See Harman v. Masoneilan Int'l, Inc.*, 442 A.2d 487, 492 (Del. 1982) ("[C]omplaint states a . . . claim in equity for breach of fiduciary . . . [that] lies within equity's inherent or exclusive jurisdiction even though damages . . . may be the only feasible relief."); *DeFranco v. Pordham*, 2015 WL 4751217, at *2 (Del. Super. Ct. Aug. 11, 2015); *Christiansen v. Robbins Hose Co. No. 1*, 2016 WL 4502301, at *2 (Del. Super. Ct. Aug. 23, 2016); *Maka v. Musial*, 2024 WL 2374483, at *3 (Del. Ch. May 23, 2024); *Williams v. Lester*, 2023 WL 4883610, at *2-3 (Del. Ch. Aug. 1, 2023); *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 979 (Del. Ch. 2016).

[108] *Parfi*, 954 A.2d at 934 (footnotes omitted).

19

submitting pleadings that "contained false allegations . . . verified as true . . . [constitutes] misconduct [] [] egregious enough to warrant dismissal . . . under Rule 41(b)."[109] Dismissal is especially appropriate when a plaintiff is given the opportunity to admit the prior falsehoods, but continues to lie to the court.[110]

Based on that standard, Govette's actions warrant dismissal of his claims with prejudice. As discussed, Govette repeatedly evidenced a lack of the candor "required . . . [by] those who resort to the judicial process."[111] Govette's wrongful actions include (1) making knowingly false allegations in the verified FAC; (2) attaching fabricated documents to the FAC; (3) testifying falsely at his deposition and the evidentiary hearing; and (4) evidencing a lack of candor in the 2022 declarations. These actions "undermined the merits of [Govette's] claim" that he validly obtained ERM stock,[112] and "directly disrupted [the] orderly case management process."[113] As this Court stated in *Parfi*, "this sort of behavior can only be met with the admittedly harsh sanction of dismissal."[114]

---

[109] *Charter Communications*, 2021 WL 1811627, at *25-26.

[110] *See Parfi*, 954 A.2d at 932 ("candor might well have resulted in the plaintiffs receiving a livable result. The plaintiffs could have told the court candidly that, as a matter of self-interest," their prior representations were false, "[b]ut instead . . . plaintiffs thus tried to elicit the sympathy of the court based on a false and misleading story and obtain a tactical advantage[.] . . . this sort of behavior can only be met with the admittedly harsh sanction of dismissal.").

[111] *Fla. Evergreen Foliage*, 744 A.2d at 461.

[112] *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 718-19 (Del. 2008) (holding dismissal is appropriate when a plaintiff's improper "conduct [] undermined the merits of his claim[.]").

[113] *In re Hillis*, 858 A.2d 325, 328 (Del. 2004).

[114] *Parfi*, 954 A.2d at 933. Additionally, Govette "forfeited [his] right to equity by [his] own inequitable conduct." *Id.* at 934.

20

Govette's lack of candor also directly impacted the Court's ruling on the Initial Motion and allowed this litigation to continue, thereby forcing Defendants to engage in repeated and time-consuming efforts to uncover the full extent of Govette's falsities. Similarly, Govette's untruthfulness necessitated holding an evidentiary hearing. Thus, Govette's actions largely contributed to the years-long delay in resolving this case. This delay prejudiced Defendants and supports dismissal.[115]

Policy considerations also strongly favor dismissal. As discussed, lack of candor in a judicial proceeding "is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society."[116] Dismissal is a proper response to such a wrong, because it "serves the purpose of protecting the integrity of the judicial process in future proceedings."[117] Via his recurrent lack of candor, Govette committed a wrong against this institution and threatened the integrity of this Court. To permit Govette to proceed with this suit would "encourage other parties to play fast and loose with the truth when speaking to this court."[118]

Govette's argument in support of a sanction short of dismissal is unconvincing. Govette's position relies on the assertion that Govette forthrightly admitted to his

---

[115] *See Hoag*, 953 A.2d at 718-19.

[116] *Hazel-Atlas Glass Co.*, 322 U.S. at 246; *see also Parfi*, 954 A.2d at 933 n.76.

[117] *Bessenyei*, 2012 WL 5830214, at *2, 9 ("[D]ismissal is proper when 'the tradition of civility and candor that has characterized litigation in this court' is threatened because 'the integrity of the litigation process is fundamentally undermined if parties are not candid with the court.'" (quoting *Parfi*, 954 A.2d at 915, 933)).

[118] *Parfi*, 954 A.2d at 933.

falsifications and the underlying facts in the fabricated documents actually happened. Those statements are false – Govette conceded during the evidentiary hearing that the allegations regarding the $25,000 check from his uncle were untrue. This further illustrates how "any other sanction" besides dismissal would prove "ineffective."[119] This is not a case where the Court can address a limited lack of candor simply by finding Govette uncredible. Instead, Govette's consistent and ongoing misrepresentations make this a more extreme case that demands a harsher sanction. Moreover, imposing a sanction via a shifted burden of persuasion "would be awkward to administer" and not "serious enough, given the [extensive and ongoing] false representations to the Court."[120]

---

[119] *Hoag*, 953 A.2d at 719. Govette also argues that the TAC no longer relies on the falsified board minutes. The implication is that there is no ensuing harm. Yet, that argument misses the point. The question is not whether Govette's current conception of his claims relies on his knowingly false allegations and documents. Instead, dismissal is appropriate because Govette repeatedly lied to the Court and knowingly submitted false allegations and documents that go to the core of the parties' dispute here, which Govette verified as true. That is serious misconduct, and it results in a forfeiture of Govette's right to seek equitable relief, regardless of whether his latest articulation of claims now omits the false allegations and fabricated documents. *Casson v. Hornberger*, 587 A.2d 454, at *1 (Del. 1991) (Table) (holding a litigant committed fraud on the court where she made knowingly false statements, despite an obligation to tell the truth, with goal of deceiving the court); *see Parfi*, 954 A.2d at 915 ("[w]hen a party knowingly misleads a court of equity in order to secure an unfair tactical advantage, it should forfeit its right to equity's aid. Otherwise, sharp practice will be rewarded, and the tradition of civility and candor that has characterized litigation in this court will be threatened."); *see also New Start Hldgs., LLC v. Zhou*, 2024 WL 4039440, at *14-15 (Del. Ch. Sept. 4, 2024) ("This Court [] has inherent discretion to refuse to assist an unclean litigant.") (citing *Bodley v. Jones*, 59 A.2d 463, at 492-93 (Del. 1947) ("The Court is so jealous in guarding itself against such misuse that it will sua sponte apply the maxim whenever it discovers the unconscionable conduct.")); *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 494 (Del. Ch. 2022) (explaining that, in the unclean hands context, this court "has rejected the notion of 'no harm, no foul' and held that '[e]quity does not reward those who act inequitably, even if it can be said that no tangible injury resulted'" (alteration in original) (quoting *Nakahara v. NS 1991 Am. Tr.*, 739 A.2d 770, 792 (Del. Ch. 1998)).

[120] *Parfi*, 954 A.2d at 934 (footnotes omitted).

Although Govette expressed remorse for his misconduct and he acted under desperation, his deception continued up to and throughout the evidentiary hearing. To some extent the Court is sympathetic to Govette's plight—founders who establish their companies on technical expertise may make mistakes due to inexperience with corporate formalities and bookkeeping. That possibility speaks to the wisdom of retaining corporate advisors and being forthright in any subsequent proceeding to sort out questions. It does not, however, justify falsifying documents or repeatedly lying to the Court. Further, excusing Govette's misconduct on such basis alone, under these facts, would have unacceptable negative policy ramifications for future proceedings. Accordingly, the Court concludes dismissal of Govette's claims with prejudice is an appropriate sanction under Rule 41(b) for his violations of Rule 3(c).

## IV.   CONCLUSION

For the foregoing reasons, Govette's claims are dismissed with prejudice pursuant to Rule 41(b) and under this Court's inherent authority to police the litigation process to ensure that acts undermining the integrity of that process are appropriately sanctioned.